Kalpana Srinivasan
  California State Bar No. 237460
  ksrinivasan@susmangodfrey.com
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Ravi Bhalla
  *Pro hac vice forthcoming*
  New York State Bar No. 5478223
  rbhalla@susmangodfrey.com
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for Plaintiff California Institute of Technology*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>        Defendants. | Case No. 5:22-MC-80318<br><br>E.D. Tex. Case No. 2:21-CV-0446-JRG<br><br>**PLAINTIFF CALIFORNIA INSTITUTE OF TECHNOLOGY'S NOTICE AND MOTION TO COMPEL SUBPOENA COMPLIANCE BY BROADCOM CORP. AND BROADCOM INC. AND MEMORANDUM IN SUPPORT**<br><br>Date: December 27, 2022<br>Time: 10:00 AM PT |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................1

ISSUES TO BE DECIDED ...............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.....................................................1

I.   Introduction................................................................................1

II.  Background .................................................................................3

     A.   The Asserted Patents ..........................................................3

     B.   The C.D. Cal. Action against Broadcom and Apple...................4

     C.   The E.D. Tex. Action against Samsung ...............................5

     D.   The Broadcom Subpoenas ..................................................6

III. Legal Standard ............................................................................8

IV.  Argument ....................................................................................8

     A.   The discovery sought from Broadcom is relevant. ...................8

     B.   The discovery sought from Broadcom is proportional. .............9

     C.   Broadcom is not entitled to assert a claim preclusion defense. .................11

     D.   There is no claim preclusion. ...........................................12

     E.   There is no claim splitting..................................................19

V.   Conclusion .................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. California Dep't of Health Servs.*,
   487 F.3d 684 (9th Cir. 2007) ...................................................................................19

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012)................................................................................14

*Bell v. United States*,
   No. CV F 02–5077, 2002 WL 1987395 (E.D. Cal. 2002) ......................................11

*Brain Life, LLC v. Elekta Inc.*,
   746 F.3d 1045 (Fed. Cir. 2014)..........................................................................12, 13

*California Inst. of Tech. v. Broadcom Ltd.*,
   25 F.4th 976 (Fed. Cir. 2022) ...................................................................................4

*Foster v. Hallco Mfg. Co.*,
   947 F.2d 469 (Fed. Cir. 1991)..................................................................................13

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013)................................................................................17

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006).............................................................................8

*Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*,
   296 F.3d 982 (10th Cir. 2002) .................................................................................19

*Hurd v. D.C.*,
   864 F.3d 671 (D.C. Cir. 2017) .................................................................................12

*Khalilpour v. CELLCO P'ship*,
   No. C 09-02712 CW MEJ, 2010 WL 1267749 (N.D. Cal. Apr. 1, 2010) ...............8

*Mendenhall v. Barber-Greene Co.*,
   26 F.3d 1573 (Fed. Cir. 1994).................................................................................17

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
   No. 19-CV-03345, 2019 WL 4963253 (N.D. Cal. Oct. 8, 2019) ............................15

*Mpoyo v. Litton Electro–Optical Sys.*,
   430 F.3d 985 (9th Cir. 2005) ..............................................................................12, 13

ii

*Oyster Optics, LLC v. Cisco Sys., Inc.*,
  No. 2:20-CV-00211-JRG, 2021 WL 1530935 (E.D. Tex. Apr. 16, 2021)
  ................................................................................................................12, 15, 16, 17

*Republic of Ecuador v. Mackay*,
  742 F.3d 860 (9th Cir. 2014) ...........................................................................8

*Rivet v. Regions Bank of Louisiana*,
  522 U.S. 470 (1998)........................................................................................12

*Rogers v. Rivera*,
  No. 115CV00007MCASCY, 2017 WL 3405606 (D.N.M. Mar. 28, 2017) ...........................11

*In re Samsung Elecs. Co.*,
  No. 22-MC-80005-VKD, 2022 WL 425579 (N.D. Cal. Feb. 11, 2022)..................................8

*SanDisk Corp. v. Kingston Tech. Co.*,
  695 F.3d 1348 (Fed. Cir. 2012)........................................................................15

*SanDisk Corp. v. Round Rock Rsch. LLC*,
  No. 11-CV-05243-RS, 2014 WL 691565 (N.D. Cal. Feb. 21, 2014) .......................................8

*In re Schimmels*,
  127 F.3d 875 (9th Cir. 1997) ...........................................................................18

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
  531 U.S. 497 (2001)........................................................................................16

*SimpleAir, Inc. v. Google LLC*,
  884 F.3d 1160 (Fed. Cir. 2018)........................................................................16

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
  322 F.3d 1064 (9th Cir. 2003) ...........................................................................18

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)........................................................................................11

*XY, LLC v. Trans Ova Genetics, LC*,
  968 F.3d 1323 (Fed. Cir. 2020)........................................................................13

iii

1

## NOTICE OF MOTION

2 Plaintiff California Institute of Technology ("Caltech") respectfully moves this Court for

3 entry of an order under Rules 37 and 45 of the Federal Rules of Civil Procedure compelling

4 Broadcom Corp. and Broadcom Inc. (together, "Broadcom") to produce documents in accordance

5 with subpoenas served on both entities in a case pending in the United States District Court for the

6 Eastern District of Texas, *California Institute of Technology v. Samsung Electronics Co., Ltd. et*

7 *al.*, No. No. 2:21-CV-0446-JRG (the "E.D. Tex. Action"). In accordance with N.D. Cal. Civil

8 Local Rule 7-2(a), Caltech notices this motion for December 27, 2022 at 10:00 AM PT. The

9 grounds for this Motion are set forth in the Memorandum of Points and Authorities below and the

10 accompanying Declaration of Ravi Bhalla ("Bhalla Dec.").

11

## ISSUES TO BE DECIDED

12 Whether non-parties Broadcom Corp. and Broadcom Inc. should be compelled to produce

13 documents and source code in response to subpoenas seeking relevant information relating to Wi-

14 Fi chips that they supply to Samsung.

15

## MEMORANDUM OF POINTS AND AUTHORITIES

16 **I.    Introduction**

17 Non-party Broadcom is resisting straightforwardly relevant discovery regarding Wi-Fi

18 chips that it sold to Samsung with a claim preclusion argument that is not an appropriate basis to

19 resist discovery, that Broadcom is not entitled to assert as a third party, and that is, in any event, a

20 meritless defense. And Broadcom raises no argument as to burden—nor could it do so given the

21 clear nature of Caltech's requests and that Broadcom has gathered similar discovery for another

22 action. This Court should roundly reject Broadcom's attempts to skirt its discovery obligations on

23 the basis of its novel and inapplicable claim preclusion argument and order full compliance with

24 the subpoenas Caltech served.

25 In connection with patent litigation that Caltech has against Samsung, Caltech seeks from

26 Broadcom documents and source code relating to Wi-Fi chips that Broadcom supplies to Samsung.

27

1

1    Because Samsung identified these Broadcom chips as performing a relevant functionality in the

2    accused infringing products, the discovery Caltech seeks from Broadcom about the operation of

3    the chips is relevant to its case against Samsung.

4          The discovery is also proportional, not only because it is tailored to the precise set of 20

5    Broadcom chips that Samsung has identified, but also because Broadcom has already collected

6    and produced much of the requested material for 18 of the chips in ongoing litigation that Caltech

7    has against Broadcom in the Central District of California. *See California Institute of Technology*

8    *v. Broadcom Ltd., et al.*, No. 2:16-cv-03714 (C.D. Cal.) (the "C.D. Cal. Action"). The burden on

9    Broadcom is thus minimal, and because the protective order in the C.D. Cal. Action prevents

10   Caltech from using the discovery it received from Broadcom outside of that litigation, Broadcom

11   is the appropriate party to provide the information at issue.

12         Nonetheless, Broadcom will not comply with the subpoenas, straining to justify its refusal

13   with a claim preclusion argument that is not a basis for a third party to refuse to produce responsive

14   discovery to a subpoena, and, in any event, is also meritless. According to Broadcom, it need not

15   comply with the subpoenas because the C.D. Cal. Action involves some of the same chips that are

16   also used in Samsung products at issue in the E.D. Tex. Action and Caltech is therefore precluded

17   from obtaining information about those chips in the E.D. Tex. Action.

18         Broadcom is not a defendant in Caltech's case against Samsung.  It thus has no standing or

19   basis to assert a claim preclusion defense in the E.D. Tex. Action because there are no claims

20   against Broadcom in that case. Samsung, the actual defendant in the case, has not resisted

21   providing discovery into its products that use Broadcom chips. Indeed, the whole reason Caltech

22   subpoenaed Broadcom in the first place is because Samsung identified certain Broadcom chips as

23   relevant to Samsung's accused products.

24         Moreover, claim preclusion does not apply at all. First, the E.D. Tex. Action and the C.D.

25   Cal. Action do not involve the same claims or causes of action. Across the two suits, not only are

26   different products at issue, but there is also an additional patent and additional patent claims at

27

2

issue in the E.D. Tex. Action that are not at issue in the C.D. Cal. Action. Caltech also expressly carved out damages based on Samsung products that use Broadcom chips from the relief it is seeking in the C.D. Cal. Action, further separating the claims at issue across the two Actions. Broadcom has explicitly acknowledged this in its correspondence with Caltech. *See* Ex. 5 at 4 (Broadcom acknowledging "Caltech's decision in the prior case to drop its claims against Samsung products containing Broadcom chips"). Second, there is no final judgment in the C.D. Cal. Action that can form the basis of any claim preclusion in the E.D. Tex. Action. And third, Broadcom and Samsung, two entities with an arms-length commercial relationship, are not in privity. No matter which way it's sliced, claim preclusion simply does not apply.

For all these reasons, and those that follow, this Court should order Broadcom's compliance with the subpoenas at issue.

## II.     Background

### A.     The Asserted Patents

The patents at issue are U.S. Patent Nos. 7,116,710 (the "'710 patent"), U.S. Patent No. 7,421,032 (the "'032 patent"), U.S. Patent No. 7,916,781 (the "'781 patent"), and U.S. Patent No. 8,284,833 (the "'833 patent") (together, "the Asserted Patents"). The Asserted Patents disclose a class of error correction codes, and the claimed methods and apparatuses in the Asserted Patents are directed to encoders and decoders. The technology disclosed in the Asserted Patents can be used to correct errors in transmissions that occur over a wireless communications channel, such as Wi-Fi. E.D. Tex. Dkt. 75 ¶¶ 27, 32-33 (Second Amended Complaint).

Wi-Fi is used in a wide array of modern consumer electronics, such as smartphones, televisions, and computers, and the functionality typically involves the use of a Wi-Fi chip installed in the consumer electronic device. The Institute of Electrical and Electronics Engineers ("IEEE") develops and maintains standards for Wi-Fi. Three of the more recent versions of the IEEE Wi-Fi standard—IEEE 802.11n, 802.11ac, and 802.11ax—involve the use of specific low-density parity check ("LDPC") error correction codes to improve performance and reduce errors

3

in transmission. *Id.* ¶¶ 31-33. These LDPC codes can be implemented by using the encoder/decoder technology disclosed by the Asserted Patents. *Id.* ¶ 33.

### B.    The C.D. Cal. Action against Broadcom and Apple

The C.D. Cal. Action was filed in 2016. Caltech initially asserted all four of the Asserted Patents against Apple Inc. and Broadcom, but two years before trial, Caltech voluntarily withdrew the '833 patent, without prejudice. C.D. Cal. Dkt. 397 (Caltech's "Notice of Withdrawal of Certain Asserted Claims of Asserted Patents"). Caltech also voluntarily withdrew all but the following claims of the '781, '710, and '032 Patents prior to trial: claims 11 and 18 of the '032 Patent, claims 13 and 22 of the '781 Patent, and claims 20 and 22 of the '710 Patent. C.D. Cal. Dkt. 1451 (Caltech's notice "withdrawing its infringement allegations with respect to all remaining claims" except for those listed).

In 2020, a jury found that Wi-Fi products from Apple and Broadcom infringed claims 20 and 22 of the '710 Patent, claims 11 and 18 of the '032 Patent, and claim 13 of the '781 Patent, and awarded Caltech over $1.1 billion in damages. C.D. Cal. Dkt. 2114 (Jury Verdict). In accordance with Caltech withdrawing the '833 Patent and various claims of the '781, '710, and '032 Patents, the judgment entered by the Central District of California does not reflect any disposition with respect to that patent or those claims. C.D. Cal. Dkt. 2245.

Apple and Broadcom appealed to the Federal Circuit, which, in February 2022, (1) upheld the jury's verdict of infringement of the '710 and '032 Patent claims, (2) vacated the jury's verdict of infringement of the '781 Patent claim, (3) vacated the damages award, and (4) remanded for a new trial on infringement of the '781 Patent claim and damages. *California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 980 (Fed. Cir. 2022), *petition for cert. filed* Sept. 7, 2022. In short, after the Federal Circuit's decision, there is no final judgment on remedy in the C.D. Cal. Action, and there is no final judgment on liability with respect to the '781 Patent.  And the new trial will not happen until June 2023. *See* C.D. Cal. Dkt. 2453 (order setting a June 6, 2023 trial date).

4

In the C.D. Cal. Action, Caltech is not asserting any claims or seeking damages based on Broadcom's sales of chips to Samsung for use in the accused Samsung products, as Broadcom itself has acknowledged. Ex. 5 at 4 (Broadcom acknowledging "Caltech's decision in the prior case to drop its claims against Samsung products containing Broadcom chips"); Ex. 6 at 6 ("Q. . . . [A]part from these numbers were there additional WiFi chips with LDPC codes that Broadcom sold during the relevant time period here that are not included in these numbers? A. Yes. There's other WiFi chips that Broadcom sold to other end customers, not Apple end customers, like Samsung . . . . [N]one of that's in here. That's not part of this case, but those are chips Broadcom sold.") (Jan. 22, 2020 C.D. Cal. trial testimony from Caltech's damages expert team).

### C. The E.D. Tex. Action against Samsung

The E.D. Tex. Action is a suit brought by Caltech against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") for infringement of the Asserted Patents. Caltech filed that action in December 2021, alleging that certain Wi-Fi products sold by Samsung infringe the Asserted Patents.

Specifically, Caltech is accusing all Samsung products that are Wi-Fi enabled and comply with any of the IEEE 802.11n, 802.11ac, or 802.11ax standards. Caltech served a pair of interrogatories asking Samsung to identify all of its Wi-Fi-enabled products and, for each such product, to identify the chip that is used as part of the Wi-Fi functionality. Bhalla Dec. ¶ 2. In its initial and supplemental interrogatory responses, Samsung identified dozens of products that use 20 different Wi-Fi chips manufactured by Broadcom. *Id.* ¶ 3. Samsung did not assert any objections or resist identifying any Broadcom chips on the basis of the C.D. Cal. Action. *Id.* ¶ 4. And, in fact, in later produced sales data, Samsung included information about the sales of Samsung products that use the same Broadcom chips that are at issue in the C.D. Cal. Action. *Id.*

Because the Wi-Fi chip in each Samsung product performs a relevant functionality, Caltech has pursued discovery from each of the chipmakers identified by Samsung, including Broadcom. Of all the chipmakers, only Broadcom has resisted producing responsive materials. *Id.* ¶ 15.

Caltech's Notice and Motion to Compel Subpoena Compliance by Broadcom – 5:22-MC-80318

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**D.     The Broadcom Subpoenas**

In April 2022, Caltech issued two, identical third-party subpoenas to Broadcom Corp. and its parent entity, Broadcom Inc. *See* Exs. 1, 2. The subpoenas seek documents and source code pertaining to chips that Broadcom supplies to Samsung, identified by Samsung as relevant to the accused Samsung products.

The subpoenas seek the following relevant information about Broadcom's Wi-Fi chips:

- Request Nos. 1 and 2: Technical documents and source code showing how the Broadcom Wi-Fi chips perform LDPC encoding and decoding and the inputs and outputs of the LDPC encoder/decoders.

- Request No. 3: Data sheets for the Broadcom Wi-Fi chips.

- Request No. 4: Documents showing any third-party technology used by the Broadcom Wi-Fi chips.

- Request No. 5: Documents showing the compliance with the IEEE 802.11n, 802.11ac, and 802.11ax standards by the Broadcom Wi-Fi chips.

- Request No. 6: Documents provided to Broadcom by its customers pertaining to various performance metrics of the Wi-Fi chips.

- Request No. 7: Documents relating to the testing of the LDPC functionality in the Wi-Fi chips that Broadcom sold to Samsung.

- Request No. 8: Documents showing the amount and price for which Broadcom sold Wi-Fi chips to Samsung.

- Request No. 9: Communications or agreements between Broadcom and Samsung pertaining to Caltech, the Asserted Patents, or the E.D. Tex. Action.

- Request No. 10: Documents Broadcom produced in the C.D. Cal. Action.

*Id.*

To the extent the materials sought by the subpoenas overlap with materials that Broadcom previously provided to Caltech in the C.D. Cal. Action, Caltech is not permitted under the C.D. Cal. Action's protective order to use those materials for any purpose other than the prosecution of

6

the C.D. Cal. Action. *See* C.D. Cal. Dkt. 101 at 1 ("Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.").

Broadcom served its responses to the subpoenas in May 2022, asserting a variety of objections. *See* Exs. 3, 4. The parties met and conferred over a number of months—via telephonic conferences on June 8 and August 8 and via e-mail correspondence—to address those objections. Bhalla Dec. ¶ 7; Ex. 5 (meet-and-confer correspondence). The focus of those discussions was one of Broadcom's global objections, which it stated as follows and incorporated into each of its individual objections:

> Broadcom objects to Caltech's subpoena seeking documents related to The *California Institute of Technology v. Broadcom Ltd., et al.*, C.D. Cal Case No. 2:16-cv-03714-GW-AGRx ("*Broadcom* case") litigation for use in this matter. In the *Samsung* case, Caltech appears to accuse Samsung products that include the same Broadcom chips as were at issue in the *Broadcom* case and of infringing the same patents (or patents with materially similar claims) as those asserted and litigated to final judgment in the *Broadcom* case. As such, Caltech's claims against Samsung are barred by the doctrine of claim preclusion, and thus the discovery sought by the subpoena is irrelevant, unduly burdensome, and not proportional to the needs of the case.

Ex. 3 at 3; Ex. 4 at 3.

Broadcom presented claim preclusion as a universal, gating issue to the entirety of Caltech's requests. *Id.*; Bhalla Dec. ¶ 8. In Broadcom's view, it was not obligated to produce any discovery in response to the subpoenas beyond documents sufficient to show the chips and patents at issue in the C.D. Cal. Action. Bhalla Dec. ¶ 11; Ex. 5 at 4.[1] Anything beyond that, Broadcom maintained, would not be proportional to the needs of the case.

After Caltech provided caselaw definitively establishing that there could be no claim preclusion based on the C.D. Cal. Action—because "a final judgment on liability without a final

---

[1] Of the 20 Broadcom chips at issue, Broadcom asserts that 18 of them are involved in the C.D. Cal. Action and discovery into those chips in the E.D. Tex. Action is barred by claim preclusion. Bhalla Dec. ¶¶ 11, 13. It asserts that discovery into the 19th chip is similarly barred because, even though it is *not involved in the C.D. Cal. Action*, it was "sold as early as 2018" and Caltech "could have" accused it in the C.D. Cal. Action. *Id.* ¶ 11. And Broadcom offered to produce a document, but not source code, showing that the 20th chip uses a direct parity encoder, which Broadcom asserts is non-infringing. *Id.*

1    judgment on remedy is not sufficiently final for purposes of claim preclusion," Ex. 5 at 5—

2    Broadcom switched gears from arguing claim *preclusion* to arguing claim *splitting*. *Id.* at 4

3    ("Caltech's claims against Samsung are barred by the doctrine of claim preclusion and, in

4    particular, the prohibition against claim-splitting."). At that point, the parties reached an impasse.

5    **III.     Legal Standard**

6           The scope of permissible discovery under Rule 26 of the Federal Rules of Civil Procedure

7    is "broad." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014) (citation omitted).

8    "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

9    claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A

10   determination of proportionality is made "considering the importance of the issues at stake in the

11   action, the amount in controversy, the parties' relative access to relevant information, the parties'

12   resources, the importance of the discovery in resolving the issues, and whether the burden or

13   expense of the proposed discovery outweighs its likely benefit." *Id.*

14          Under Rule 45, a party may seek discovery from non-parties, and the permissible scope of

15   that discovery is the same as the permissible scope under Rule 26. *See In re Samsung Elecs. Co.*,

16   No. 22-MC-80005-VKD, 2022 WL 425579, at *1 (N.D. Cal. Feb. 11, 2022); *Gonzales v. Google,*

17   *Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).

18          On a motion to compel discovery, "[o]nce the moving party establishes that the information

19   requested is within the scope of permissible discovery, the burden shifts to the party opposing

20   discovery" to establish why the discovery should not be permitted. *Khalilpour v. CELLCO P'ship*,

21   No. C 09-02712 CW MEJ, 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010); *SanDisk Corp. v.*

22   *Round Rock Rsch. LLC*, No. 11-CV-05243-RS, 2014 WL 691565, at *1 (N.D. Cal. Feb. 21, 2014).

23   **IV.     Argument**

24          **A.      The discovery sought from Broadcom is relevant.**

25          The Asserted Patents disclose error correction codes, including LDPC codes, and the

26   claimed methods and apparatuses in the Asserted Patents are directed to correct errors in

27

8

1  transmissions that occur over a wireless communications channel, such as a Wi-Fi channel.

2  Samsung has identified dozens of "Wi-Fi products with LDPC functionality" that include 20

3  different chips manufactured by Broadcom. Bhalla Dec. ¶ 3. Because Caltech's infringement

4  allegations focus on LDPC functionality and Samsung has identified specific Samsung products

5  that use Broadcom chips to provide LDPC functionality, the requested materials are relevant.

6  Broadcom has not contested the relevance of LDPC functionality to the Asserted Patents in its

7  written objections or during the meet and confer process.

8  　　　　Specifically, Request Nos. 1-7 pertain to the technical operation of the chips.

9  Understanding the operation of the chips is directly relevant to the claim that Samsung products

10  infringe the Asserted Patents, and the most direct evidence of how those chips operate is

11  encompassed by these requests. Request Nos. 6-8 are relevant to Caltech's damages. Documents

12  responsive to these requests bear on the value of the functionality provided by the Broadcom chips.

13  Request No. 9 seeks Broadcom's communications or agreements with Samsung pertaining to

14  Caltech, the Asserted Patents, and the E.D. Tex. Action—materials that will include any

15  indemnification agreements between Samsung and Broadcom and communications about plainly

16  relevant topics, such as the Asserted Patents. Finally, Request No. 10 simply seeks the materials

17  that Broadcom produced in the C.D. Cal. Action, which will necessarily encompass relevant

18  materials pertaining to the 18 chips that Broadcom claims are involved in both the E.D. Tex. and

19  C.D. Cal. Actions.

20  　　　　**B.**　　　**The discovery sought from Broadcom is proportional.**

21  　　　　The Rule 26(b)(1) proportionality factors all weigh in favor of Caltech.

22  　　　　First, "the issues at stake in the action" and the "importance of the discovery in resolving

23  th[ose] issues" are significant. Fed. R. Civ. P. 26(b)(1). The central issue of the E.D. Tex. litigation

24  is whether the accused Samsung products infringe the Asserted Patents. Fundamental intellectual

25  property rights are thus at stake and the discovery sought from Broadcom is integral to

26  understanding the relevant Wi-Fi functionality of the accused Samsung products.

27

9

1    Second, the amount in controversy is significant, as evidenced by the $1.1 billion awarded

2    by the jury in the C.D. Cal. Action and the fact that Samsung, like Apple (against which the jury

3    assessed $838 million in damages in the C.D. Cal. Action, *see* C.D. Cal. Dkt. 2114), is a large and

4    substantial   manufacturer   of   Wi-Fi-enabled   consumer   electronics,   *see*   Samsung,

5    https://www.samsung.com/us/ (listing for sale dozens of Wi-Fi enabled products across multiple

6    product categories); *Samsung Electronics Announces Third Quarter 2022 Results* (Oct. 27, 2022),

7    https://news.samsung.com/global/samsung-electronics-announces-third-quarter-2022-results

8    (reporting $7.9 billion in operating profit).

9    Third, as between Caltech and Broadcom, Broadcom has the best access to relevant

10   information regarding its own chips and how they work. In fact, much of the information sought

11   from Broadcom cannot be obtained anywhere else. For example, Broadcom is the sole steward of

12   its source code, and Caltech is not permitted to use the discovery it received from Broadcom in the

13   C.D. Cal. Action outside of that litigation. And as a large and profitable corporation, Broadcom

14   certainly has the resources to provide the requested discovery. *See Broadcom Inc. Announces Third*

15   *Quarter Fiscal Year 2022 Financial Results and Quarterly Dividends*, Broadcom (Sep. 1, 2022),

16   https://www.broadcom.com/company/news/financial-releases/60481 (reporting net income of

17   $3.1 billion).

18   Finally, the burden or expense of the proposed discovery does not outweigh its likely

19   benefit, especially given the importance of the proposed discovery to understanding the relevant

20   operations of the accused Samsung products and that much of the source code and related technical

21   documents have *already been* collected and produced by Broadcom in the C.D. Cal. Action. In

22   light of this, there is no colorable burden defense that Broadcom can maintain.

23   For all these reasons, the discovery sought from Broadcom is proportional to its relevance.

24   Nevertheless, Broadcom challenges the discovery at issue on the basis of claim preclusion and

25   claim splitting. Neither position has merit.

26

27

1    **C.      Broadcom is not entitled to assert a claim preclusion defense.**

2          Broadcom has no basis to assert a claim preclusion defense because it is not a party to the

3    E.D. Tex. Action. "Claim preclusion, like issue preclusion, is an *affirmative defense*. . . .

4    Ordinarily, it is incumbent on the *defendant* to plead and prove such a defense . . . ." *Taylor v.*

5    *Sturgell*, 553 U.S. 880, 907 (2008) (citations omitted) (emphasis added). Consistent with this,

6    discussions of the defense refer to it being asserted by a *party. See, e.g.*, 18 Charles Alan Wright

7    & Arthur R. Miller, *Federal Practice and Procedure* § 4405 (3d ed.) ("Once properly raised, a

8    *party* asserting preclusion must carry the burden of establishing all necessary elements." (emphasis

9    added)); Fed. R. Civ. P. 8(c) (requiring that "a *party* must affirmatively state" the affirmative

10   defense of res judicata (emphasis added)).

11          Here, Broadcom is attempting to assert a claim preclusion defense on *behalf of a party*,

12   Samsung, to resist discovery that Samsung itself is not even resisting. In other words, though not

13   facing suit, Broadcom is attempting to assert a defense that is only available to a litigant. Applying

14   claim preclusion here would take it outside the context in which it's meant to be applied. As one

15   court explained, "[t]he doctrine of res judicata is meant to protect parties against being harassed

16   by repetitive actions." *Bell v. United States*, No. CV F 02–5077, 2002 WL 1987395, at *4 (E.D.

17   Cal. 2002). But non-party Broadcom is not facing "repetitive actions."

18          Similarly, claim preclusion most often arises when a party who **lost** an initial suit seeks a

19   second bite at the apple through a second suit. *Rogers v. Rivera*, No. 115CV00007MCASCY, 2017

20   WL 3405606, at *4 (D.N.M. Mar. 28, 2017) ("Claim preclusion is sometimes described as a tool

21   used to prevent a party from having 'two bites at the apple.'" (citation omitted)). Caltech is not

22   seeking a second bite at the apple, nor is it seeking to relitigate issues that it lost in a previous suit.

23   It is seeking to enforce patents—including claims and patents that it successfully enforced in the

24   C.D. Cal. Action and claims and patents not at issue in the C.D. Cal. Action—against Samsung

25   products that use Broadcom chips. The chips that Broadcom sold to Samsung were explicitly

26

27

1    excluded from the C.D. Cal. Action, and two new Broadcom chips, not involved in the C.D. Cal.

2    Action, are at issue in the E.D. Tex. Action.

3        And in patent cases, claim preclusion presents factual issues for the jury to resolve. So, at

4    best, Broadcom's argument is one that ***Samsung*** might be able to make ***to the jury***. *Oyster Optics,*

5    *LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00211-JRG, 2021 WL 1530935, at \*4 (E.D. Tex. Apr. 16,

6    2021) ("Once the Court has construed the claims, Cisco may present evidence *to the jury—e.g.*,

7    evidence that the claims are patentably indistinct from others—to prove its assertion that the claims

8    are essentially the same as other claims previously litigated." (emphasis added)). But it is not an

9    argument that Broadcom can assert to resist plainly relevant discovery at this early stage.

10        All these principles caution against the novel application of claim preclusion that

11    Broadcom seeks here. "Preclusion is designed to limit a plaintiff to one bite at the apple, not to

12    prevent even that single bite." *Hurd v. D.C.*, 864 F.3d 671, 679 (D.C. Cir. 2017). Caltech is now

13    taking that single bite against Samsung.

14        Nevertheless, even if Broadcom were entitled to assert a claim preclusion defense, it could

15    not satisfy the elements of that defense.

16        **D.**     **There is no claim preclusion.**

17        "Under the doctrine of claim preclusion, '[a] final judgment on the merits of an action

18    precludes the parties or their privies from relitigating issues that were or could have been raised in

19    that action.'" *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476 (1998) (quoting *Federated*

20    *Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). A court can apply claim preclusion

21    only when the prior suit: "(1) involved the same claim or cause of action as the later suit; (2)

22    reached a final judgment on the merits; and (3) involved the same parties or privies." *Brain Life,*

23    *LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir. 2014) (applying Ninth Circuit law from *Mpoyo*

24    *v. Litton Electro–Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005)). Broadcom cannot satisfy ***any***

25    of these prongs.

26

27

1          **1.      The two Actions do not involve the same claim or cause of action.**

2          The C.D. Cal. Action does not involve the same claim or cause of action as the E.D. Tex.

3   Action because different products and an additional patent/patent claims are at issue. The issue of

4   whether "two claims of infringement constitute the same claim or cause of action is an issue

5   particular to patent law" that is subject to Federal Circuit precedent. *Id.* at 1052. The Federal

6   Circuit "define[s] a cause of action based on the transactional facts from which it arises," and "[i]n

7   a patent case, transactional facts include 'both the asserted patents and the accused activity.'" *XY,*

8   *LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1333 (Fed. Cir. 2020) (citations omitted).

9          The C.D. Cal. and E.D. Tex. Actions do not involve the same accused products. An

10  "'infringement claim,' for purposes of claim preclusion [does not] embrace [ ] more than the

11  specific *devices* before the court in the first suit." *Brain Life*, 746 F.3d at 1053 (quoting *Young*

12  *Eng'rs Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305, 1316 (Fed.Cir.1983)) (emphasis added);

13  *see Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479 (Fed. Cir. 1991) ("An essential fact of a patent

14  infringement claim is the structure of the device or devices in issue."). And "[a]djudication of

15  liability for infringement is a determination that *a thing* is made, used or sold without authority

16  under the claim(s) of a valid enforceable patent." *Brain Life*, 746 F.3d at 1053 1053 (quoting *Young*

17  *Eng'rs*, 721 F.2d at 1316) (emphasis added).

18         The "devices" and "thing[s]" before the Court in the C.D. Cal. Action are not the same as

19  the devices and things before the Court in the E.D. Tex. Action. The C.D. Cal. Action involves

20  *Apple* and *Broadcom* products, while the E.D. Tex. Action involves *Samsung* products. *Compare*

21  First Amended Complaint ¶ 36, C.D. Cal. Dkt. 36 (accusing "Broadcom products that incorporate

22  IRA/LDPC encoders and/or decoders"); *id.* ¶ (accusing "Apple products that incorporate

23  IRA/LDPC encoders and/or decoders") *with* Second Amended Complaint ¶ 37, E.D. Tex. Dkt. 75

24  (accusing Samsung "Wi-Fi products that incorporate encoders and/or decoders claimed in the

25  Asserted Patents").

26

27

13

It is inapposite that some of the accused Samsung products use Broadcom chips that were initially accused in the C.D. Cal. Action or that some of the accused Samsung products use Broadcom chips that are also used by Apple products accused in the C.D. Cal. Action. Such overlap does not transform a Samsung product that uses a Broadcom chip into the same *thing* as a Broadcom chip. Nor does it make a Samsung product that uses a Broadcom chip the same thing as an Apple product that uses that Broadcom chip. Regardless of any intersection, Broadcom chips, Apple products, and Samsung products remain distinct and separate "thing[s]."

Moreover, Caltech explicitly *excluded* Broadcom's sales to Samsung for use in its devices from the damages it is seeking in the C.D. Cal. Action. Ex. 6 at 5 ("The hypothetical negotiation that we're talking about is only as it pertains to Apple and Broadcom and the Apple related infringement and Broadcom's infringement related to Apple and these imports into the U.S. That's it. Those are all we looked at. Those are the only chips at issue in this case."). That is, Caltech did not accuse the Broadcom chips to the extent those chips were sold to Samsung for use in the devices that Caltech is accusing in the E.D. Tex. Action. Broadcom acknowledged this during the meet and confer process. Ex. 5 at 4 (acknowledging "Caltech's decision in the prior case to drop its claims against Samsung products containing Broadcom chips"). As a result, the purported "overlap" is, in reality, no overlap at all because Caltech did not pursue claims based on Broadcom chips sold to Samsung for use in the accused Samsung products.

Further widening the gap between the products at issue in the two Actions, there are two Broadcom chips used in the accused Samsung products that are *not at issue* in the C.D. Cal. Action. For the first chip, Broadcom asserts that because it was "sold as early as 2018," Caltech is still precluded because it "could have" accused it in the C.D. Cal. Action. Bhalla Dec. ¶ 11. The law is clear that "the products at issue in a patent suit are those in existence at the time the suit is filed." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1346 (Fed. Cir. 2012). The C.D. Cal. Action was filed in 2016, and the chip at issue was not sold until 2018. The fact that Caltech did not seek to amend the C.D. Cal. Action to include this chip cannot be the basis for any form of

14

preclusion. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 19-CV-03345, 2019 WL 4963253, at *4 (N.D. Cal. Oct. 8, 2019) ("While a party may seek to pursue claims that accrue during the pendency of a lawsuit, the party is not required to do so, and res judicata will not be applied to such accruing claims if the party elects not to have them included in the action.").

For the second chip, Broadcom asserts that it is non-infringing. But Broadcom's assertion does not relieve Broadcom of its discovery obligations, and it should still produce responsive material pertaining to that chip. Despite Broadcom's claim that the chip employs a non-infringing encoder, and its apparent willingness to produce a document showing the type of encoder it employs, Samsung has identified it as providing LDPC functionality for an accused product, establishing its relevance. Caltech should be permitted to assess the operation of the chip for itself, and in order to do that, Caltech needs the discovery sought by the subpoena.

The C.D. Cal. and E.D. Tex. Actions also do not involve all of the same patents. In addition to there being separate products at issue in the two Actions, there are additional patents and patent claims at issue. In the E.D. Tex. Action, Caltech is asserting the '833 Patent. Though Caltech initially asserted the '833 Patent in the C.D. Cal. Action, it voluntarily withdrew it, as discussed above, *two years* before trial. Further, Caltech is asserting numerous claims of the '710, '732, and '032 Patents that were voluntarily withdrawn in the C.D. Cal. Action.[2]

Caselaw clearly establishes that a voluntary withdrawal of a patent or particular claims carries no preclusive effect, even with respect to the party against which those claims were initially asserted. A "'patentee's voluntary withdraw[al] of previously asserted patent claims' for the purpose of narrowing a case is treated as a dismissal without prejudice." *Oyster Optics,* 2021 WL 1530935, at *5 (E.D. Tex. Apr. 16, 2021) (citation omitted); *SanDisk Corp. v. Kingston Tech. Co.*,

---

[2] As explained earlier, Caltech voluntarily withdrew all but the following claims in the C.D. Cal. Action: claims 20 and 22 of the '710 Patent, claims 11 and 18 of the '032 Patent, and claims 13 and 22 of the '781 Patent. In the E.D. Tex. Action, Caltech is presently asserting the following, larger set of claims: claims 11-17 and 19-33 of the '710 Patent, claims 1-8 and 10-22 of the '032 Patent, claims 3-18 and 22 of the '781 Patent, and claims 1-4, 6-11, and 13-14 of the '833 Patent. Bhalla Dec. ¶ 16.

695 F.3d 1348, 1353 (Fed. Cir. 2012) (noting that the voluntarily withdrawal of claims is "akin to either a Federal Rule of Civil Procedure 15 amendment to the complaint . . . or a Rule 41(a) voluntary dismissal of claims without prejudice" (citation omitted)). And a dismissal without prejudice "should not preclude re-litigation of the dismissed claims in the same court." *Oyster Optics,* 2021 WL 1530935, at *5. Such a dismissal does not even prevent "the plaintiff from returning later, to the same court, with the same underlying claim." *Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 505 (2001).

If Caltech would be permitted to again sue Broadcom directly on the patent and claims it voluntarily withdrew, it follows that Caltech is certainly permitted to sue a *different party* on that very patent and those very claims. But that is precisely what Broadcom argues Caltech *cannot* do. The Court should reject this baseless argument.

As indicated in Broadcom's subpoena objections, Caltech expects Broadcom to argue that Caltech is precluded from asserting the '833 Patent and the withdrawn claims because they are "essentially the same" as the claims that Caltech is asserting in the C.D. Cal. Action. *See SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018) ("[W]here different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same.").

That question, however, is for the jury (assuming it's actually raised by the actual party in suit with Caltech). As such, it cannot be resolved at this stage and thus cannot be used as a basis to refuse discovery. "The comparison of different claims in different patents for the purpose of determining whether they are 'essentially the same' is a question of fact, not a question of law" and is "for the jury to decide." *Oyster Optics*, 2021 WL 1530935, at *3. It is the burden of the party asserting claim preclusion to show "that the asserted patent claims in the two suits are essentially the same," *id.* at *4, and Broadcom cannot meet that burden where, as here, claim construction has not even occurred in the E.D. Tex. Action. Without claim construction, the scope of the asserted claims remains in flux, and until that scope is finalized, the asserted claims cannot

16

1  be compared across the two Actions. *Id.* ("*Once the Court has construed the claims*, Cisco may

2  present evidence *to the jury*—*e.g.*, evidence that the claims are patentably indistinct from others—

3  to prove its assertion that the claims are essentially the same as other claims previously litigated."

4  (emphasis added)).

### 2.  There has been no final judgment.

6  Next, there has been no final judgment in the C.D. Cal. Action. While Caltech has already

7  ***won*** an infringement verdict on the '710 and '032 Patents in the C.D. Cal. Action, the issue of

8  infringement of the '781 Patent has not been finalized, nor have damages been awarded on remand.

9  It is blackletter law that a final judgment on liability without a final judgment on remedy is not

10  sufficiently final for purposes of claim preclusion. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*,

11  721 F.3d 1330, 1341 (Fed. Cir. 2013) ("Looking to general res judicata principles governing the

12  preclusive effect of a judgment, it is well-established that where the scope of relief remains to be

13  determined, there is no final judgment binding the parties (or the court)."); *Mendenhall v. Barber-*

14  *Greene Co.*, 26 F.3d 1573, 1580 (Fed. Cir. 1994) ("Secondly, the judgment of this court on liability

15  in Astec resulted in a remand for further proceedings. It was not the final judgment in the case. To

16  rise to that level, the litigation must be entirely concluded so that Mendenhall's cause of action

17  against Astec was merged into a final judgment." (citing Restatement (Second) of Judgments § 13

18  (1982))). As such, ***none*** of the Asserted Patents in the E.D. Tex. Action is yet subject to a final

19  judgment.[3]

### 3.  The two Actions do not involve the same parties or privies.

21  Finally, there is no claim preclusion because the C.D. Cal. Action and the E.D. Tex. Action

22  do not involve the same parties. The C.D. Cal. Action involves Apple and Broadcom whereas the

23  E.D. Tex. Action involves Samsung. Nor is Samsung a privy of Apple or Broadcom. On this point,

---

25  [3] There is no final judgment for the '710 or '032 Patents because the remedy for the infringement
26  of those patents has not yet been determined. There's no final judgment for the '781 Patent because
    the Federal Circuit vacated the liability and damages judgment for that patent. And there's no final
27  judgment for the '833 Patent because, as discussed, it was withdrawn from the C.D. Cal. Action.

1    the only evidence Broadcom has offered to support such a finding is that "Broadcom had the same

2    interest to defend against [Caltech's] allegations as Samsung does now." Ex. 5 at 4. But that is

3    insufficient to support the very strict effects of claim preclusion.

4            "Even when the parties are not identical, privity may exist if there is substantial identity

5    between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Pres.*

6    *Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (internal quotation

7    marks and citation omitted). "[P]rivity is a flexible concept dependent on the particular relationship

8    between the parties in each individual set of cases." *Id.*

9            In *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997), the Ninth Circuit provided the

10   following examples of relationships sufficiently close to establish privity:

11           First, a non-party who has succeeded to a party's interest in property is bound by any prior
12           judgment against the party. Second, a non-party who controlled the original suit will be
             bound by the resulting judgment. Third, federal courts will bind a non-party whose interests
13           were represented adequately by a party in the original suit. . . . In addition, 'privity' has
             been found where there is a 'substantial identity' between the party and nonparty . . . ;
14           where the nonparty 'had a significant interest and participated in the prior action,' . . . ; and
             where the interests of the nonparty and party are 'so closely aligned as to be virtually
15           representative,' . . . . Finally, a relationship of privity can be said to exist when there is an
             'express or implied legal relationship by which parties to the first suit are accountable to
16           non-parties who file a subsequent suit with identical issues.'

17   *Id.* (citations and internal quotation marks omitted). None of the relationships enumerated in *In re*

18   *Schimmels* describe the relationship between Broadcom and Samsung. Broadcom's bare assertion

19   that it and Samsung have the "same interest to defend against" falls far short of establishing any

20   of the above relationships. And the only apparent alignment in interest between Broadcom and

21   Samsung is the general interest any defendant has in avoiding a finding of liability or an award of

22   damages. Nor is **Broadcom** in a position to say whether **Samsung's** interests are adequately

23   represented in the C.D. Cal. Action. If anything, the different litigation strategies that Samsung is

24   pursuing in the E.D. Tex. Action indicate that they are not.

25

26

27

Caltech's Notice and Motion to Compel Subpoena Compliance by Broadcom – 5:22-MC-80318

1    By all indications, the Samsung-Broadcom relationship is an arms-length commercial one

2    in which Samsung purchases a product from Broadcom that it then installs and configures within

3    a separate product that it sells. That is not sufficient to establish privity.

4    *        *        *

5    There are thus four, independent reasons why claim preclusion does not apply to the E.D.

6    Tex. Action. Across the two Actions: (1) the accused products are different, (2) the asserted patents

7    and claims are different, (3) there has been no final judgment, and (4) the parties are different and

8    the relevant parties are not in privity.

9    **E.        There is no claim splitting.**

10    Broadcom has also maintained that, if claim preclusion does not apply, then claim splitting

11    prevents Caltech from obtaining the discovery at issue. This argument is likewise without merit.

12    The doctrine of claim splitting derives from the concept that a plaintiff generally lacks a

13    "right to maintain two separate actions involving the same subject matter at the same time in the

14    same court and against the same defendant." *Adams v. California Dep't of Health Servs.*, 487 F.3d

15    684, 688 (9th Cir. 2007) (citation omitted). The claim-splitting analysis is closely related to the

16    claim preclusion analysis. "[I]n the claim-splitting context, the appropriate inquiry is whether,

17    assuming that the first suit were already final, the second suit could be precluded pursuant to claim

18    preclusion." *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1

19    (10th Cir. 2002); *see Adam*s, 487 F.3d at 688 (same).

20    For all the reasons already discussed, even if the C.D. Cal. Action were deemed final, it

21    would have no effect on Broadcom's discovery obligations because there are different patent

22    claims, products, defendants, and causes of action at issue across the two Actions. And to the extent

23    claim splitting can be extended to privies, *see Adam*s, 487 F.3d at 688, for the reasons discussed

24    above, such extension is inappropriate here, where Broadcom and Samsung are not privies. Just as

25    there is no basis for claim preclusion, there is no basis for claim splitting.

26

27

**V.    Conclusion**

    For the foregoing reasons, this Court should compel Broadcom's compliance with the subpoenas and enter the attached proposed order.

DATED: November 21, 2022

                                        Respectfully submitted,

                                        By:    */s/ Kalpana Srinivasan*

                                        Kalpana Srinivasan
                                            California State Bar No. 237460
                                            ksrinivasan@susmangodfrey.com
                                        **SUSMAN GODFREY LLP**
                                        1900 Avenue of the Stars, Suite 1400
                                        Los Angeles, CA 90067
                                        Telephone: (310) 789-3100
                                        Facsimile: (310) 789-3150

                                        Ravi Bhalla
                                            *Pro hac vice forthcoming*
                                            New York State Bar No. 5478223
                                            rbhalla@susmangodfrey.com
                                        **SUSMAN GODFREY LLP**
                                        1301 Avenue of the Americas, 32nd Fl.
                                        New York, NY 10019
                                        Telephone: (212) 336-8330
                                        Facsimile: (212) 336-8340

                                        *Attorneys for Plaintiff California Institute of Technology*

20

### **CERTIFICATE OF SERVICE**

1

2          I hereby certify that a true and correct copy of the foregoing has been served via e-mail on

3   the following individual, counsel for Broadcom, who represented to me via e-mail that he is

4   authorized to accept electronic service of this notice and motion on behalf of Broadcom Corp. and

5   Broadcom Inc. *See* Ex. 5 at 2.

6
          Taylor Gooch
7          WilmerHale
          One Front Street, Suite 3500
8          San Francisco, CA 94111 USA
          Taylor.Gooch@wilmerhale.com
9
                                                    */s/ Ravi Bhalla*
10
                                                    Ravi Bhalla
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

21