1    Mark D. Selwyn (SBN 244180)
     mark.selwyn@wilmerhale.com
2    WILMER CUTLER PICKERING
     HALE AND DORR LLP
3    2600 El Camino Real, Suite 400
     Palo Alto, CA 94306
4    Telephone: (650) 858-6031
5
     James M. Dowd (SBN 259578)
6    james.dowd@wilmerhale.com
     WILMER CUTLER PICKERING
7    HALE AND DORR LLP
     350 South Grand Avenue, Suite 2400
8    Los Angeles, CA 90071
     Telephone:  (213) 443-5300
9
10   Taylor Gooch (SBN 294282)
     taylor.gooch@wilmerhale.com
11   WILMER CUTLER PICKERING
     HALE AND DORR LLP
12   One Front Street, Suite 3500
     San Francisco, CA 94111
13   Telephone: (628) 235-1000
     *Attorneys for Non-Parties Broadcom Inc. and Broadcom Corp.*
14

15                       UNITED STATES DISTRICT COURT
16              FOR THE NORTHERN DISTRICT OF CALIFORNIA
                            SAN JOSE DIVISION
17

| | |
|---|---|
| CALIFORNIA INSTITUTE OF TECHNOLOGY, | Case No. 5:22-MC-80318 |
| Plaintiff, | [Underlying Case Pending in E.D. Tex., Case No. 2:21-CV-0446-JRG] |
| v. | **NON-PARTIES BROADCOM INC. AND BROADCOM CORP.'S OPPOSITION TO PLAINTIFF CALIFORNIA INSTITUTE OF TECHNOLOGY'S NOTICE AND MOTION TO COMPEL SUBPOENA COMPLIANCE BY BROADCOM CORP. AND BROADCOM INC.** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | Date: January 10, 2023 San Jose Courthouse, Courtroom 2, 5th Floor Time: 10:00 AM PT |

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................3

    a.    Broadcom Litigation ................................................................................3

    b.    Samsung Litigation ................................................................................7

    c.    Caltech's Subpoenas to Broadcom ..........................................................7

III.    ARGUMENT ....................................................................................................9

    a.    Caltech's Claims Are Barred By Claim Splitting, And As Such Its Subpoenas Seek Irrelevant And Unduly Burdensome Discovery ..........................................................9

    b.    Caltech's Requests Are Overbroad And Unduly Burdensome, And Call For The Production Of Irrelevant Information ........................................................18

IV.    CONCLUSION.................................................................................................20

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. Amazon.com, Inc.*,
  No. 14-cv-01379-PSG, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015) ...............................12

*Adaptix, Inc. v. AT&T Mobility LLC*,
  No. 6:12-CV-120, 2015 WL 12696204 (E.D. Tex. May 12, 2015).......................................10

*In re ASM Int'l, N.V.*,
  774 F. Appx. 650 (Fed. Cir. May 23, 2019) .......................................................................10

*Bank of New York Mellon v. Riley*,
  2022 WL 1773364 (5th Cir. June 1, 2022) ..........................................................................10

*Beinin v. Ctr. for Study of Popular Culture*,
  No. C06-2298JW(RS), 2007 WL 832962 (N.D. Cal. Mar. 16, 2007)...................................18

*Brain Life, LLC v. Elekta Inc.*,
  746 F.3d 1045 (Fed. Cir. 2014).................................................................................14, 16

*California Inst. Of Tech. v. Broadcom Ltd.*,
  25 F.4th 976 (Fed. Cir. 2022) .............................................................................6, 12

*California Institute of Technology v. Broadcom Ltd.*,
  No. 2:16-cv-03714 (C.D. Cal.) ................................................................................. *passim*

*California Institute of Technology v. Samsung Electronics Co., Ltd. et al.*,
  No. 2:21-CV-0446-JRG (E.D. Tex.)............................................................................. *passim*

*ChriMar Sys., Inc. v. Alcatel-Lucent, Inc.*,
  No. 6:15-CV-163, 2015 WL 12941897 (E.D. Tex. May 19, 2015).......................................10

*Cooper v. Retrieval-Masters Creditors Bureau, Inc.*,
  42 F.4th 688 (7th Cir. 2022) ................................................................................10

*Dart Indus. Co. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) ................................................................................18

*Elec. Scripting Prod., Inc. v. HTC Am. Inc.*,
  No. 17-CV-05806-RS (RMI), 2021 WL 3773607 (N.D. Cal. Aug. 25, 2021)......................19

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) ................................................................................18

i

*Howell Hydrocarbons, Inc. v. Adams*,
    897 F.2d 183 (5th Cir. 1990) ................................................11

*Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*,
    930 F.3d 1325 (Fed. Cir. 2019)................................................16

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    No. 19-CV-03345-EMC, 2019 WL 4963253 (N.D. Cal. Oct. 8, 2019) ...........10, 11

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ................................................3, 9

*Oyster Optics, LLC v. Ciena Corp.*,
    No. 21-CV-02241-JSW, 2021 WL 3022008 (N.D. Cal. July 16, 2021)........ *passim*

*In re PersonalWeb Techs., LLC, et al. Pat. Litig.*,
    No. 18-MD-02834-BLF, 2019 WL 1455332 (N.D. Cal. Apr. 2, 2019) ...........12, 15

*In re Schimmels*,
    127 F.3d 875 (9th Cir. 1997) ................................................13

*Williams v. Rodriguez*,
    No. 1:14-cv-02073, 2017 WL 511858 (E.D. Cal. Feb. 8, 2017) ...........17

**Other Authorities**

Fed. R. Civ. P. 26(b) ................................................9, 18, 19

Fed. R. Civ. P. 45 ................................................18

**BROADCOM'S OPPOSITION TO
CALTECH'S MOTION TO COMPEL**

CASE No. 5:22-MC-80318

1

## I.    INTRODUCTION

2  On or about April 13, 2022, California Institute of Technology ("Caltech") served

3 Broadcom Inc. and Broadcom Corp. (collectively, "Broadcom") with subpoenas to produce

4 documents regarding Broadcom chips allegedly incorporated into certain Samsung products.

5 Caltech's subpoenas are an improper attempt to get a "second bite at the apple" in its longstanding

6 dispute with Broadcom over Broadcom's proprietary Wi-Fi chip technology.   Because the

7 discovery these subpoenas seek is prohibited under claim preclusion doctrine, and specifically the

8 prohibition against claim splitting, Caltech's motion should be denied and the subpoenas quashed.

9  In 2016, Caltech brought a patent infringement suit against Broadcom in the Central

10 District of California that has since been tried to a jury, gone up on appeal to the Federal Circuit,

11 and been remanded for a new trial on damages.   *See California Institute of Technology v.*

12 *Broadcom Ltd., et al.*, No. 2:16-cv-03714 (C.D. Cal.) (the "C.D. Cal." or "Central District"

13 Action).   In that suit, Caltech alleged that the implementation of certain standardized Wi-Fi

14 technology in Broadcom chips infringed U.S. Patent Nos. 7,116,710 ("'710 patent"), 7,421,032

15 ("'032 patent"), 7,916,781 ("'781 patent"), and 8,284,833 ("'833 patent") (collectively, the

16 "Asserted Patents"), and expressly asserted these patents against not only the chips themselves but

17 also against the products of Broadcom customers that, like Samsung, incorporate Broadcom Wi-

18 Fi chips into their own consumer electronics products.

19  For example, Caltech alleged that "products incorporating the Broadcom Accused

20 Products" (e.g., the Samsung products now accused in Texas) "directly infringe," and that

21 Broadcom induced and contributed to its "customers, partners, and/or end users" (e.g., Samsung's)

22 direct infringement by publishing "instruction materials, specifications, and promotional

23 literature" as well as offering "technical assistance, training, and/or consulting services" on how

24 to make, use, and sell "products incorporating the Broadcom Accused Products."   *See* C.D. Cal.

25 Action, Dkt. 1 (Complaint) at ¶¶ 47 ('710 patent), 63 ('032 patent), 79 ('781 patent), and 95 ('833

26 patent).   Caltech then proceeded to take discovery on Samsung's use of Broadcom Wi-Fi chips,

27 including Broadcom's sales of these chips to Samsung's suppliers as well as Broadcom product

28

BROADCOM'S OPPOSITION TO        CASE NO. 5:22-MC-80318
CALTECH'S MOTION TO COMPEL

roadmaps and other technical material provided to Samsung—both accusing and seeking damages for third-party consumer electronics products (like those of Samsung) that incorporate Broadcom's accused chips.

The claims Caltech now asserts against Samsung in Texas with respect to Broadcom's chips thus arise from the same common nucleus of operative fact as the claims asserted against Broadcom in the Central District Action. The asserted Caltech patents are the same. The accused Broadcom chips are the same. In both cases, Caltech accuses "products incorporating the Broadcom Accused Products" of infringing. And in both cases, Caltech accuses the identical functionality in Broadcom's chips. Moreover, it is indisputable that Caltech knew Samsung was a Broadcom customer and knew Samsung products incorporate the accused Broadcom chips during the Central District Action. It is also indisputable that Caltech could have pursued its infringement and damages claims for Broadcom chips incorporated into Samsung's products through trial in the Central District Action.

Instead, Samsung chose to attempt to split its claims—bringing a second suit against Samsung asserting the same four patents against Samsung products that use the same accused Broadcom chips that were at issue in the Central District Action. *See California Institute of Technology v. Samsung Electronics Co., Ltd. et al.*, No. 2:21-CV-0446-JRG (E.D. Tex.) (the "E.D. Tex." or "Texas" Action). But the doctrine of claim splitting prohibits a plaintiff from splitting its cause of action into separate grounds and raising them in successive lawsuits as Caltech has done here. *See Oyster Optics, LLC v. Ciena Corp.*, No. 21-CV-02241-JSW, 2021 WL 3022008, at *3 (N.D. Cal. July 16, 2021) ("[A] party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together."). Caltech's infringement theories in this case based on Samsung's alleged use of Broadcom's chips are therefore barred.

Undaunted, Caltech demands that Broadcom produce an unreasonably broad collection of documents that it argues is relevant to Caltech's claims against Samsung products that contain Broadcom's chips. Because Caltech's claims are barred by the prohibition against claim splitting,

1    Caltech's requests are overbroad, unduly burdensome, not proportional to the needs of the case,

2    and not reasonably calculated to lead to the discovery of admissible evidence, among other defects.

3    *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (granting motion to quash

4    subpoena where requests sought irrelevant information that placed "undue burden" on nonparty).

5    Caltech's motion should be denied.

6    **II.      BACKGROUND**

7            **a.      Broadcom Litigation**

8            Caltech filed its lawsuit against Broadcom in the Central District of California on May 26,

9    2016, asserting infringement of the '710, '032, '781, and '833 patents.  C.D. Cal. Action, Dkt. 1

10   (Complaint) at ¶¶ 16-21; *id.*, Dkt. 36 (Amended Complaint) at ¶¶ 19-24.  Caltech alleged that the

11   Asserted Patents claim a type of error correction code called an "IRA code" that uses "novel

12   encoders and decoders" (Dkt. 36 at ¶¶ 26-27) and that this technology was purportedly

13   incorporated into the "Low-Density Parity Check" ("LDPC") codes used in certain Wi-Fi

14   standards.  *Id.* ¶¶ 30-32.  Caltech further alleged that Broadcom makes semiconductor chips that

15   incorporate these allegedly infringing LDPC encoders and decoders (*id.*, ¶ 36), and sells those

16   chips to consumer electronic companies like Samsung, Apple, and others.   *Id.*, ¶¶ 37-42.

17           Caltech's Central District complaint alleged infringement by all Broadcom chips that

18   support LDPC, and Caltech subsequently served contentions that named a long list of accused

19   chips, including nineteen chips for which it now seeks discovery:  ███████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████    Ex. 1 (Caltech's Final Identification of Accused Products in

23   Central District Action) at 1-2 (identifying LDPC Products listed in Broadcom's Interrogatory No.

24   1 as Accused Products); Ex. 2 (Defendants' Second Supplemental Objections And Responses To

25

26

27

28

**BROADCOM'S OPPOSITION TO                                    CASE NO. 5:22-MC-80318**
**CALTECH'S MOTION TO COMPEL**

California Institute Of Technology's Third Set Of Common Interrogatories (No. 11)) at 5-26 (list of LDPC Products identified in response to Interrogatory No. 1 and their encoders and decoders).[1]

During the litigation, Caltech took extensive discovery on Broadcom's chips, including on Samsung products that incorporated Broadcom's chips.  This discovery included:

- Interrogatory responses identifying all sales of LDPC chips to Samsung's suppliers (*See* Ex. 4 [Broadcom's response to Caltech's Interrogatory No. 2 requesting sales information]; Ex. 5 [Excerpt of Attachment 2-D to Broadcom's response to Interrogatory No. 2 listing sales information, including sales to Samsung's suppliers]);

- Requests for admissions that Samsung's products included Broadcom's chips (Ex. 6 [Caltech's First Set Of Requests For Admission To Broadcom]);

- Requests for production that included search terms for "Samsung" in connection with Broadcom's chips (Ex. 7 [Caltech's Second Set Of Email Production Requests]); and

- Deposition testimony regarding Broadcom's relationship with Samsung and Samsung's use of Broadcom's WiFi products (Exs. 8 [████ Dep.]; Ex. 12 [████████ Dep.]; Ex. 9 [██████ Dep.]).

Indeed, Caltech elicited testimony from numerous Broadcom executives about Samsung and its use of Broadcom Wi-Fi chips.  For example, the then ████████████████████ ████████████████████████████████, testified that Samsung is one of Broadcom's largest OEM customers for WiFi chips.  Ex. 8 (████ Dep.) at 10:20-23, 63:11-18.  Caltech questioned ████████ extensively about Broadcom's "████████████ ████████████████████" (reproduced in part below), which, among other things, ████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████

---

[1] In addition to these nineteen chips, Caltech has identified one additional Broadcom chip for which it seeks discovery, ████████.  That chip uses a "direct encoder," on which Caltech took extensive discovery during the Central District Action and then admitted at trial "does not use Caltech's patents."  Dowd Decl. at ¶ 3; Ex. 14 (Dkt. 1797-01, filed under seal) at 1, 3 (██████████ █████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ ████████████████████████████ Ex. 3 (Central District Action, January 17, 2020 PM Session Trial Tr., Testimony of Caltech Expert Matthew Shoemake) at 76:11-13 ("Q And do you have an opinion as to whether the direct encoder uses Caltech's patents? A The direct encoder does not use Caltech's patents.").

4

1

2

3

4

5

6

7   Ex. 11 ("████████████████████████") at BCM-CAL_00177751; Ex. 8 ████

8   Dep.) at 215:19-216:3 (████████████████████████████████████). ██

9   ████ answered numerous Caltech questions about Samsung's use of Broadcom chips, including

10   about which Samsung products use which accused chips. *See, e.g.*, Ex. 8 (████ Dep.) at 100:20-

11   101:4.

12          Similarly, the then-████████████████████████████████████

13   ████████████ responsible for the accused Broadcom chips, ████████ testified

14   that Samsung was one of Broadcom's largest OEM customers for Wi-Fi chips. Ex. 12 (████

15   Dep.) at 9:4-6, 23:13-24:2. Indeed, Caltech marked as an exhibit and questioned ████

16   about a Broadcom presentation stating that Broadcom Wireless Connectivity Combo chips are

17   used in more than ██████████████████████. *Id.* at 74:24-75:4; Ex. 13 (

18   ██████████████████) at BCM-CAL_00650909 ("████████████████████████

19   ██████").

20          Caltech also asked Broadcom witnesses detailed questions about Samsung's supply chain,

21   and Broadcom's sales into that supply chain of specific Wi-Fi chips for use in Samsung products.

22   For example, ████████ was questioned at length about companies that supply Wi-Fi modules to

23   Samsung, Samsung's use of those Wi-Fi modules in its Galaxy products, and those module

24   suppliers' purchase of Broadcom ██████████████████ chips for incorporation

25   into their Wi-Fi modules. Ex. 8 (████ Dep.) at 86:17-23, 205:19-206:19, 264:1-266:24.

26   Broadcom's ████████████████████████████, also testified that Samsung's

27

28

**BROADCOM'S OPPOSITION TO**                    **CASE NO. 5:22-MC-80318**
**CALTECH'S MOTION TO COMPEL**

module suppliers have purchased Broadcom's ███████ chip. Ex. 9 (███████ Dep.) at 10:14-15, 263:6-21.  Notably, Caltech accuses all these Broadcom chips in the Texas Action.

After taking the aforementioned discovery, Caltech voluntarily declined to include Samsung products in its claims against Broadcom.  Dkt. 1 ("Motion to Compel") at 2-3, 4-5.  Caltech also voluntarily withdrew its claims relating to the '833 patent and all but two claims in each of the '032, '781, and '710 patents.  C.D. Cal. Action, Dkts. 397 and 1451.

In addition to **voluntarily** declining to include Broadcom's sales to Samsung, Caltech moved to exclude information related to Broadcom's sales to Samsung.  For example, Caltech tried more than once to **exclude** Broadcom from relying on supplemental financial information relating to products that were substantially the same as the accused products (that contained the same accused encoders and decoders), but that Caltech had not formally listed as an accused product.  *Id.*, Dkt. 1793-2; Dkt. 2157 (Dec. 30, 2019 Pretrial hearing) at 61-67.  Broadcom objected, explaining that ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████."  Ex. 14 (Dkt. 1797, filed under seal) at 4.  Indeed, Broadcom reiterated that if Caltech "want[s] to contend that these products infringe and to claim damages for them, now is the time that they should do so."  *Id.*, Dkt. 2157 at 64:17-21.  Despite this clear and final warning, however, Caltech proceeded to effectuate the warned-of waiver—insisting that trial be limited solely to its identified list of Broadcom chips incorporated into the products solely of one consumer electronics customer, Apple.  And Caltech succeeded in this argument, with the court in the Central District Action excluding the disputed financial information from trial.  *Id.*, Dkt. 2157 at 67:24-25.  Ultimately, the claims and infringement theories that Caltech did not waive (e.g., against Broadcom's sales to Apple under the '710, '032, and '781 patents) were tried to verdict in the Central District in 2020.  C.D. Cal. Action, Dkt. 2114 (Jury Verdict).  In 2022, the Federal Circuit vacated that verdict on multiple grounds, and remanded the case for further proceedings consistent with the Federal Circuit's ruling. *California Inst. Of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 980 (Fed. Cir. 2022).

**BROADCOM'S OPPOSITION TO**
**CALTECH'S MOTION TO COMPEL**

**CASE NO. 5:22-MC-80318**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.    Samsung Litigation

On December 3, 2021, Caltech sued Samsung in the Eastern District of Texas alleging, among other claims, that Samsung products containing chips that support the same LDPC feature of certain Wi-Fi standards, such as 802.11n, .11ac, and .11ax, infringe the same '710, '781, '032, and '833 patents asserted in the prior Central District action.  E.D. Tex. Action, Dkt. 1.  One of Samsung's affirmative defenses is that, to the extent Caltech's claims were based upon Broadcom's chips, those claims are barred by the claim preclusion doctrine and its prohibition against claim splitting.  *Id.*, Dkt. 44 at 25.

As relevant here, Caltech apparently served discovery on Samsung asking it to list the Broadcom chips used in its products that provide the accused Wi-Fi functionality.  In response, and subject to its objections, Samsung identified a total of twenty Broadcom chips.  Dkt. 1-1 at ¶¶2-3.  Nineteen were the same as chips accused in the prior Central District action.  As explained above, the final chip uses an encoder that, after extensive discovery in the Central District Action, Caltech admitted does not infringe the asserted patents.  *See supra* Footnote 1.

### c.    Caltech's Subpoenas to Broadcom

Caltech's subpoenas to Broadcom requested that Broadcom produce, among other things:

- Fourteen broad categories of documents identified as "sufficient to show" the architecture, design, and technical operation of the "Identified Products," such as "architecture specifications, design specifications, design overviews, functional and design specifications." Dkts. 1-2, 1-3.

- "All documents" provided to customers regarding the performance of "any Identified Product." *Id.*

- "All documents concerning or reflecting communications and/or agreements between" Broadcom and any of the Defendants relating to the patents at issue or either the Texas or Central District actions. *Id.*

- "All documents" Broadcom produced or made available for inspection in the Central District matter. *Id.*

Broadcom and Caltech held their first meet and confer to discuss the subpoenas in late April 2022.  Ex. 10 (Email chain with Caltech counsel confirming meet and confer for April 27, 2020); Dowd Decl., ¶ 1.  At that meeting, Caltech expressed that it was primarily interested in

BROADCOM'S OPPOSITION TO                                      CASE No. 5:22-MC-80318
CALTECH'S MOTION TO COMPEL

Broadcom's source code for the accused LDPC functionality in the Broadcom chips identified in the subpoenas, namely documents responsive to Request No. 2 in each subpoena.  Dowd Decl., ¶ 1; *see* Dkts. 1-2 and 1-3.  Broadcom explained that it believed Caltech's requests to be barred by the doctrine of claim preclusion, and in particular its prohibition against claim splitting.  Dowd Decl., ¶ 1.

Broadcom timely served objections and responses to Caltech's subpoenas on May 13, 2022.  Dkts. 1-4 and 1-5.  Broadcom objected to each document request in Caltech's subpoenas, including as vague, overly broad, and unduly burdensome to produce.  Broadcom further objected to each as seeking information not relevant to any claim or defense and unduly burdensome given that Caltech's claims against the Broadcom's chips were barred by claim preclusion and its prohibition against claim splitting.

Following service of Broadcom's objections and responses, Broadcom and Caltech met and conferred by phone twice over the course of the next several months.  At both meet and confers, the parties discussed only (1) Caltech's specific requests for source code and (2) Broadcom's objection based on claim preclusion/claim splitting.  Dowd Decl., ¶ 2.  Given Caltech's initial representation that it would be satisfied with the production of Broadcom's source code, the parties did not discuss Caltech's other requests or Broadcom's other independent objections.

Presently, Broadcom has offered to produce (1) documents sufficient to show that its chips at issue in the Texas case are the same as 19[2] of the chips at issue in the Central District Action and (2) documents sufficient to show that the one additional chip uses an encoder that Caltech conceded does not infringe.  Dkt. 1-1, ¶ 11.  But Caltech refused this discovery.  Instead, it moved to compel compliance with ***all*** requests in its subpoenas (despite primarily meeting and conferring only with regards to its request for source code).

---

[2] During the parties' meet and confer process, Broadcom believed that only 18 of the identified Broadcom chips were at issue in the Central District Action.  *See, e.g.*, Dkt. 1-1, ¶ 11.  Upon further investigation, Broadcom has confirmed that 19 of the identified chips were at issue in the Central District Action.

III.    ARGUMENT

Caltech's requests seek discovery on claims that are barred by the doctrine of claim preclusion and its prohibition against claim splitting.  As such, the discovery sought by the subpoenas is irrelevant, unduly burdensome, and not proportional to the needs of the case.  Fed. R. Civ. P. 26(b).  A court may deny a motion to compel or quash a subpoena that requests irrelevant information, including because discovery seeking irrelevant information places an undue burden on the subpoenaed party.  *See Moon*, 232 F.R.D. at 638 (granting motion to quash subpoena where requests sought irrelevant information that placed "undue burden" on nonparty).

As an initial matter, Caltech's argument that Broadcom cannot assert claim preclusion or claim splitting because it is an affirmative defense that a defendant must plead misunderstands Broadcom's objection.  Motion to Compel at 11-12.  Under Federal Rule of Civil Procedure 26, Caltech's motion should be denied because its subpoenas seek information that is irrelevant, unduly burdensome, and not proportional to the needs of the case—its subpoenas request documents that are unlikely to lead to discovery of admissible evidence because Caltech's claims against Samsung's products incorporating Broadcom chips are barred by claim preclusion and its prohibition against claim splitting.  At best, the burden of production far outweighs any relevance the documents might have.  *Id.*  In addition, contrary to Caltech's suggestion that Samsung has not adequately preserved its claim preclusion argument, Samsung **expressly pled** claim preclusion as an affirmative defense. Dkt. 44.  It is therefore properly preserved by Samsung and a live issue in the case.

a.    **Caltech's Claims Are Barred By Claim Splitting, And As Such Its Subpoenas Seek Irrelevant And Unduly Burdensome Discovery**

Claim splitting prohibits a party from "split[ting] a cause of action into separate grounds of recovery and rais[ing] the separate grounds in successive lawsuits."  *Oyster Optics*, 2021 WL 3022008, at *3 ("[A] party must raise in a single lawsuit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together.").  Claim splitting is a subset of the claim preclusion doctrine, and as such, many of the standards for determining if a

9

1   claim is precluded are relevant to determining if a claim is improperly split.  *See, e.g.*, *MLC Intell.*

2   *Prop., LLC v. Micron Tech., Inc.*, No. 19-CV-03345-EMC, 2019 WL 4963253, at *4 (N.D. Cal.

3   Oct. 8, 2019); *Adaptix, Inc. v. AT&T Mobility LLC*, No. 6:12-CV-120, 2015 WL 12696204, at *11

4   (E.D. Tex. May 12, 2015) (describing "claim splitting" as a "sub-species of the doctrine of claim

5   preclusion"); *Bank of New York Mellon v. Riley*, No. 21-40383, 2022 WL 1773364, at *3 (5th Cir.

6   June 1, 2022) ("The prohibition on claim splitting is a principle based in *res judicata*." (citing *In*

7   *re Super Van Inc.*, 92 F.3d 366, 371 (5th Cir. 1996))); *In re ASM Int'l, N.V.*, 774 F. Appx. 650,

8   653 (Fed. Cir. May 23, 2019) ("Generally, the claim-splitting doctrine is a form of claim preclusion

9   that bars a subsequent patent infringement action when it arises from the same transactional facts

10  as a prior action." (internal quotation marks omitted)).

11          Claim-splitting does not require a final judgment on the merits.  *ChriMar Sys., Inc. v.*

12  *Alcatel-Lucent, Inc.*, No. 6:15-CV-163, 2015 WL 12941897, at *3 (E.D. Tex. May 19, 2015)

13  (claim splitting "do[es] not require a prior judgment" (internal quotation marks omitted)); *Adaptix*,

14  2015 WL 12696204, at *11 ("In the context of claim splitting, the analysis requires only the

15  *assumption* that the first suit was finally decided." (emphasis in original)); *Cooper v. Retrieval-*

16  *Masters Creditors Bureau, Inc.*, 42 F.4th 688, 696 (7th Cir. 2022) ("The elements of claim splitting

17  are similar [to res judicata], except that a final judgment on the merits in the first action is not

18  required.").

19          Therefore, to determine whether a claim is improperly split, the court must assume that the

20  judgment in the prior lawsuit is final, and then ask, if the prior judgment were final, would the

21  claim in the instant suit be precluded?  *Oyster Optics, LLC*, 2021 WL 3022008, at *4.  "[T]o

22  determine whether there has been impermissible claim splitting, a court considers whether the

23  causes of action and relief sought, as well as the parties or privies to the action, are the same."

24  *MLC Intell. Prop., LLC*, 2019 WL 4963253, at *4 (citation omitted).  Because here the answer to

25  both questions is "yes," Caltech's claims against Broadcom's chips in Samsung's products are

26  prohibited.

27

28

BROADCOM'S OPPOSITION TO                                          CASE NO. 5:22-MC-80318
CALTECH'S MOTION TO COMPEL

i.  *Broadcom And Samsung Are Privies With Respect To Caltech's Claims Against Broadcom's Chips.*

As with claim preclusion, claim splitting prohibits successive litigation against the same party or parties in privity. *MLC Intell. Prop., LLC*, 2019 WL 4963253, at *4 ("[T]o determine whether there has been impermissible claim splitting, a court considers whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." (citation omitted)). Samsung was in privity with Broadcom in the Central District Action because Broadcom adequately represented Samsung's interests with respect to the accused Broadcom chips in Samsung's products. *See Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990) ("[N]on-party is in privity with a party for res judicata purposes … if the party adequately represented his interests in the prior proceeding.").

In the Central District Action, Caltech litigated to final judgment patent infringement claims against Broadcom chips that are the same as the Broadcom chips in the Samsung products at issue in the Texas action. Indeed, for much of the Central District Action, Caltech specifically accused Samsung products with Broadcom chips of infringing the asserted Caltech patents, before ultimately dropping its infringement and damages allegations against Samsung's products. As discussed at length above (*supra*, Section II.a.), Caltech took extensive discovery on these questions in the Central District Action. For example, Caltech deposed numerous Broadcom witnesses, adducing testimony that Samsung was one of Broadcom's top customers for Wi-Fi chips, that ███████████████████████████████, and that the specific Broadcom chip models in these Samsung products include the same chips now accused in Texas. Ex. 8 (████ Dep.) at 63:11-18, 86:17-23, 100:20-101:4, 205:19-206:19, 264:1-266:24; Ex. 12 (████████ Dep.) at 10:4-6, 24:13-2; Ex. 9 (███████ Dep.) at 263:6-21. Caltech further questioned Broadcom witnesses about Broadcom's "█████" for sales of specific Broadcom Wi-Fi chips in specific Samsung Galaxy products, and even elicited detail on Samsung's supply chain for these products—including with respect to the ████████████████████ chips now accused again in Texas. Ex. 11 ████████████████████████████████") at BCM-CAL_00177751; Ex. 8 (█████ Dep.) at 210:3-23, 215:19-216:3. And Samsung

11

1   demanded, and Broadcom produced, extensive financial data showing sales of the accused chips

2   to Samsung's suppliers.  Ex. 4 (Broadcom's response to Interrogatory No. 2 requesting sales

3   information); Ex. 2 (Excerpt of Attachment 2-D to Broadcom's response to Interrogatory No. 2

4   listing sales information, including sales to Samsung suppliers); *see generally* Section II.a.

5         Broadcom thus stood in privity with Samsung with respect to the defense of Broadcom's

6   chips against Caltech's infringement allegations—the same chips now accused again in Texas.  In

7   fact, Broadcom advanced numerous arguments against Caltech's infringement and damages

8   theories and secured reversal of the jury's verdict at the Federal Circuit.  *See California Inst. of*

9   *Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022).  Courts have repeatedly found privity in

10  cases like this.  *See, e.g.*, *In re PersonalWeb Techs., LLC, et al. Pat. Litig.*, No. 18-MD-02834-

11  BLF, 2019 WL 1455332, at *7-8 (N.D. Cal. Apr. 2, 2019), *aff'd sub nom. In re PersonalWeb*

12  *Techs. LLC*, 961 F.3d 1365 (Amazon's customers found to be in privity with Amazon because

13  their interests as customers were identical to Amazon's own interests and Amazon adequately

14  represented those interests in the prior action; privity exists "when the parties are so closely related

15  and their interests are so nearly identical that it is fair to treat them as the same parties for purposes

16  of determining the preclusive effect of the first judgment"); *id.* at *8 (a "lesser degree of privity is

17  required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new

18  defendant in a later action"); *Adaptix, Inc. v. Amazon.com, Inc.*, No. 14-cv-01379-PSG, 2015 WL

19  4999944, at *6 (N.D. Cal. Aug. 21, 2015) ("[T]he John Does—as customers of the [d]efendants—

20  are shielded from the new action through privity because … [the plaintiff] was fully aware that

21  customers like the John Does existed, were in possession of the allegedly infringing devices and

22  were operating those devices on carrier Defendants' LTE networks, yet failed to bring claims

23  against them.").

24        Caltech's sole challenge to Broadcom's privity with Samsung is the incorrect suggestion

25  that because the "Samsung-Broadcom relationship is an arms-length commercial one" privity

26  supposedly cannot exist.  Motion to Compel at 18-19.  Caltech's sole cited authority for this

27  incorrect proposition is *In re Schimmels*, but this case actually **refutes** Caltech and demonstrates

28

**BROADCOM'S OPPOSITION TO**                                              **CASE NO. 5:22-MC-80318**
**CALTECH'S MOTION TO COMPEL**

that Broadcom and Samsung were indeed in privity.  Far from supporting Caltech, *Schimmels* identifies the exact relationship between Samsung and Broadcom described above as a "sufficiently close" relationship "to justify a finding of 'privity,'" ruling that privity exits for "a non-party whose interests were represented adequately by a party in the original suit" or "where the interests of the nonparty and party are so closely aligned as to be virtually representative." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quotation marks omitted).  Caltech suggests that Samsung is pursing different litigation strategies than Broadcom, and this shows that Samsung's interests were not adequately represented by Broadcom.  Motion to Compel at 18.  But Caltech provides no factual or legal support for this assertion.  It is clear that Broadcom's interest in defending against Caltech's claims of infringement against its Wi-Fi chips is exactly aligned with Samsung's interest in defending against Caltech's allegations of infringement for the exact same claims.  Caltech's conclusory arguments should be rejected.

ii. *The Central District Action Involved The Same Claim Against The Same Broadcom Chips*

To determine if a claim is precluded under claim splitting, the movant must demonstrate "that the patents are the same and that the accused products are essentially the same." *Oyster Optics, LLC*, 2021 WL 3022008, at *4.  "Accused devices are essentially the same where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Id.* (*citing Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008)).

1. *The Products Are The Same Or Substantially The Same*

As an initial matter, Caltech does not dispute that nineteen of the Broadcom chips identified in the Texas Action are exactly the same as the chips already litigated in the Central District Action.  For these chips, Caltech's only argument is that because the Central District Action involved Broadcom chips in **Apple** OEM devices, but the Texas action involves those same Broadcom chips in **Samsung** OEM devices, Caltech's discovery should be allowed to proceed.  Motion to Compel at 13.  That is incorrect.

It is well established that accused devices are "essentially the same" if any differences between them are "unrelated to the limitations in the claim of the patent." *Oyster Optics, LLC*,

13

1  2021 WL 3022008, at *4 (*citing Acumed*, 525 F.3d at 1324).  Here, Caltech's allegations in the

2  Texas Action center on the same LDPC functionality of the same Broadcom chips that were at

3  issue in the Central District Action; the OEM products that incorporate the Broadcom chip are

4  irrelevant to these allegations.  *See* Motion to Compel at 3-4 (explaining that the asserted patents

5  relate to Wi-Fi error correction code functionality), 5 (explaining that Caltech asked Samsung to

6  identify the chips in its products that are "used as part of the Wi-Fi functionality").  Any difference

7  between the Apple products that contain Broadcom chips and the Samsung products that contain

8  the same Broadcom chips is therefore outside of the accused LDPC functionality and wholly

9  unrelated to the patent claims that Caltech asserts against both sets of products.  Caltech does not

10  argue otherwise.

11      Caltech also argues that its claims are not barred because it "*excluded* Broadcom's sales to

12  Samsung for use in its devices from the damages it is seeking in the Central District Action."

13  Motion to Compel at 14.  Far from exonerating, this admission ***demonstrates*** that Caltech is

14  engaged in prohibited claim splitting.  First, Caltech's admission does not negate the fact that the

15  infringement claims against the Broadcom chips in the Texas Action are exactly the same as they

16  were in the Central District Action (which Caltech does not dispute in its motion).  Second,

17  Caltech's admission proves that Caltech's Texas claims should be barred.  Caltech concedes it

18  could have pressed its claims against Samsung products containing the accused Broadcom chips

19  in the Central District Action, but it chose instead to attempt to exclude (i.e., split) them for

20  assertion in this, separate, litigation.  That is exactly what the doctrine of claim splitting is intended

21  to prevent—successive filing of claims that could have and should have been brought in one

22  lawsuit, harassing parties and burdening the court.  *See PersonalWeb*, 2019 WL 1455332, at *12

23  ("A main purpose behind the rule preventing claim splitting is to protect the defendant from being

24  harassed by repetitive actions based on the same claim … In the patent infringement context, the

25  Federal Circuit has explained that 'claim preclusion bars both claims that were brought as well as

26  those that *could have been* brought.'" (emphasis in original) (*citing Brain Life, LLC v. Elekta Inc.*,

27  746 F.3d 1045, 1052 (Fed. Cir. 2014))).

28

14

Finally, Caltech argues that Broadcom's assertion that one of the chips[3] is non-infringing "does not relieve Broadcom of its discovery obligations" and it should still produce responsive material.  Motion to Compel at 15.  This argument fails for two reasons.

***First***, the specific chip at issue is ███████, which uses a "direct encoder."  Dowd Decl., ¶ 3.  Caltech took extensive discovery on the "direct encoder" used in the ████████ during the Central District Action, where Caltech "███████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████" Ex. 14 (Dkt. 1797-01, filed under seal) at 1, 3 ("███████████████████ ████████████████████████████████████████████████████████ ██████").  Caltech's own expert then analyzed Broadcom's direct encoder and admitted under oath during the Central District trial that it does not infringe.  Ex. 3 (C.D. Cal. Action, January 17, 2020 PM Session Trial Tr., Testimony of Caltech Expert Matthew Shoemake) at 76:11-13 ("Q And do you have an opinion as to whether the direct encoder uses Caltech's patents? A The direct encoder does not use Caltech's patents."), 76:14-24 (explaining why Broadcom's direct encoder does not infringe Caltech's patents).  The claim splitting doctrine thus applies to the ███████.  *Oyster Optics, LLC*, 2021 WL 3022008, at *4 (*citing Acumed*, 525 F.3d at 1324).

***Second***, Caltech ignores Broadcom's offer to produce documents showing that this final chip does not use an accused encoder, brushing it off as insufficient, and instead insists it is entitled to the full scope of the discovery it requested for that chip, including source code, data sheets, compliance standards, documents provided to customers, documents relating to testing, and sales documents.  *Id.* at 6, 15.  In light of Broadcom's explanation that the chip does not contain the accused functionality at all, and in fact uses an encoder Caltech agrees does not infringe, Broadcom's compromise offer is inherently reasonable to avoid burdensome discovery on an irrelevant product.

---

[3] Caltech also argues that the fact that an additional chip was not accused in the Broadcom case mean that its claims cannot be precluded or prohibited.  Motion to Compel at 14-15.  As explained above, Broadcom has confirmed that in fact nineteen of the twenty Broadcom chips at issue were accused in the C.D. Cal. Action.

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.  The Patents Are The Same Or Substantially The Same

There is no dispute that the '833, '710, '732, and '032 patents asserted in the Texas Action were also asserted in the prior Central District Action.  Caltech instead focuses solely on the fact that Caltech voluntarily withdrew the '833 patent and certain claims of the other three patents prior to trial, alleging that this means that the patents at issue in the two cases are not the same or substantially the same.  Caltech's argument is incorrect.

**First**, voluntary withdrawal of patent claims from one case does not avoid claim preclusion or its prohibition against claim splitting—indeed, it demonstrates Caltech is engaged in the exact conduct claim splitting prohibits.  *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014), is instructive.  There, the plaintiff voluntarily withdrew method patent claims in one case, and then attempted to re-assert those method claims against the same products in a subsequent litigation. *Id.* at 1050-51.  The lower court concluded that allowing the plaintiff to re-assert the method claims "would amount to impermissible claim splitting," and the Federal Circuit affirmed.  *Id.* at 1053 (disagreeing with plaintiff/appellant's argument that "that the dismissal without prejudice of those [method] claims gave it carte blanche to reassert those claims" in a later litigation).  Caltech is attempting to do the same thing here—reassert patent claims that it could have brought, but chose not to, in prior litigation against the same products and parties in privity.

**Second**, the subject matter of the '833 patent is essentially the same as the other three patents, and Caltech is therefore precluded from bringing its claims against this patent.  *Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019) ("Because—and only because—the asserted claims of the '305 patent were materially the same as those that were or could have been asserted in the '514 patent, we held that Indivior's action on the '305 patent was likely claim precluded and that the district court abused its discretion in entering a preliminary injunction.").  All four patents share a common title, named inventors, and specification, and all four are members of the same patent family, each a continuation from the application that led to the '710 patent. *E.g.*, C.D. Cal. Action, Dkt. 36 at ¶¶19-23.  As described in Caltech's complaints in both litigations, all four patents at issue are directed to the same alleged invention—they

BROADCOM'S OPPOSITION TO                                      CASE NO. 5:22-MC-80318
CALTECH'S MOTION TO COMPEL

"introduce a new type of error correction codes, called 'irregular repeat and accumulate codes' (or 'IRA codes')." C.D. Cal. Action, Dkt. 36 at ¶ 26; E.D. Tex. Action, Dkt. 1 at ¶ 29 (calling the four patents collectively the "IRA Patents"). Caltech stated in the Texas action that "[t]he claims in the IRA Patents [i.e., '833, '710, '732, and '032 patents] enable a person of ordinary skill in the art to implement IRA codes using simple circuitry." E.D. Tex. Action, Dkt. 1 at ¶¶ 29-30. It similarly explained in the Central District Action that "[t]he claims in the ['833, '710, '732, and '032 patents] describe the error correction methods in ways that enable a person of ordinary skill in the art to implement them using simple circuitry." C.D. Cal. Action, Dkt. 36 at ¶ 27. Thus, the '833 patent is essentially the same as the other three patents at issue for purposes of the claim splitting doctrine.

Caltech's argument that "sameness" is a factual issue for the jury (Motion to Compel at 16) does not apply here where it has affirmatively pled that the four patents are directed to essentially the same purported invention. C.D. Cal. Action, Dkt. 36 at ¶ 26-27; E.D. Tex. Action, Dkt. 1 at ¶ 29-30. Caltech also argues that claim construction is required to determine if the patents are essentially the same but never explains how claim construction could change the scope of the '833 patent such that it is no longer directed to the same "IRA codes" as the other three patents. *See Williams v. Rodriguez*, No. 1:14-cv-02073, 2017 WL 511858, at *9 (E.D. Cal. Feb. 8, 2017) ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are deemed waived." (citing *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010))). Caltech's conclusory and unsupported arguments are without merit.

\*     \*     \*

The doctrine of claim splitting bars Caltech's claims against Broadcom's chips. As a result, its subpoena requests seek discovery that is irrelevant, unduly burdensome, and not proportional to the needs of the case. Caltech's motion to compel should be denied.

17

b.   **Caltech's Requests Are Overbroad And Unduly Burdensome, And Call For The Production Of Irrelevant Information**

The claim splitting doctrine bars Caltech's claims against Broadcom's patents, but even if that were not the case, Caltech's subpoena requests are unreasonably broad and, on their face, seek information that is not relevant to any claims or defenses in the Texas action.  Caltech's motion should therefore be denied on this independent basis.  Fed. R. Civ. P. 26(b).

The Federal Rules of Civil Procedure "afford nonparties special protection against the time and expense of complying with subpoenas." *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994).  For example, Rule 45(d)(3)(iv) states that a court "must quash or modify a subpoena that … subjects a person to undue burden."  "When applied to third parties, discovery can be limited to protect them from harassment, inconvenience, or disclosure of confidential documents." *Beinin v. Ctr. for Study of Popular Culture*, No. C06-2298JW(RS), 2007 WL 832962, at \*2 (N.D. Cal. Mar. 16, 2007), *objections overruled*, 2007 WL 1795693 (N.D. Cal. June 20, 2007); *see also Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (necessary discovery "restriction[s] may be broader when a nonparty is the target of discovery").  Under this framework, Caltech's motion should be denied.  At the very least, Caltech should be ordered to narrow its requests.

***First***, Caltech's subpoenas seek information that is not relevant to any claim or defense.  For example, Caltech's Request No. 2 seeks "[t]he source code, including RTL code, for the Identified Products, ***including but not limited to***" several enumerated LDPC encoding and decoding functionalities. *E.g.*, Dkt. 1-2 at 4.  On its face, this request seeks all source code for the "Identified Products," including source code not relevant at all to the Wi-Fi functionality that Caltech purports infringes. *See also id.* at 5 (Request No. 6, seeking documents provided to customers regarding chip features "including," but presumably not limited to, with respect to the accused features).  Request No. 3 seeks "[a]ll data sheets for each of the Identified Products," and Request No. 4 seeks "[d]ocuments sufficient to identify any third-party developed technology used by You as part of any of the Identified Products" and documents sufficient to understand the operation of the third-party technology. *Id.* at 4.  Neither of these requests is reasonably limited

18

1    to seek information relating to the accused Wi-Fi functionality purportedly in Broadcom's chips.

2    Request No. 10 seeks "[a]ll documents [Broadcom] produced or made available for inspection" in

3    the Central District action. *Id.* at 6. But there were parties and products involved in that suit that

4    are completely irrelevant to Caltech's lawsuit against Samsung, including Apple Inc. and Cypress

5    Semiconductor Corporation and their products. *See generally* C.D. Cal. action, Dkt. 36 (Amended

6    Complaint). These requests seek irrelevant information and are therefore improper. *See Elec.*

7    *Scripting Prod., Inc. v. HTC Am. Inc.*, No. 17-CV-05806-RS (RMI), 2021 WL 3773607, at *4

8    (N.D. Cal. Aug. 25, 2021) (subpoena requests seeking information on "products *other* than the

9    products accused in this litigation … are patently irrelevant and therefore doubly impermissible"

10    (emphasis in original)).

11        ***Second***, Caltech's subpoenas seek discovery that can be more easily obtained from a party-

12    in-suit. Fed. R. Civ. P. 26(b)(2)(C). For example, Request No. 8 seeks "[d]ocuments sufficient to

13    show the total amount of each Identified Product You have sold to each Defendant and the prices

14    You charged for the same." Dkt. 1-2 at 5. This information should be sought from the defendants

15    in the Texas action. In fact, Caltech's own declaration submitted with its motion to compel

16    indicates it has already received this discovery from Samsung. Dkt. 1-1 at ¶ 4 ("[W]hen Samsung

17    produced financial data for its accused products, it included financial data for accused products

18    that use Broadcom chips.").

19        ***Third***, even requests purportedly limited to the "Identified Products" are impermissibly

20    broad, vague, and unduly burdensome. For example, Request No. 1 requests ***18*** different types of

21    documents relating to four broad categories of LDPC operation. *E.g.*, Dkt. 1-2 at 3-4. Request

22    No. 7 requests "[a]ll documents … relating to testing of LDPC coding functionality." *Id.* at 5.

23    These two requests are unreasonably broad and would be unduly burdensome for non-party

24    Broadcom to comply with.

25        Because Caltech's requests are overly broad and unduly burdensome, including because

26    they seek irrelevant discovery and discovery that should be requested from a party-in-suit,

27    Caltech's motion to compel should be denied.

28

BROADCOM'S OPPOSITION TO                                    CASE NO. 5:22-MC-80318
CALTECH'S MOTION TO COMPEL

1      **Finally**, the parties have not met and conferred on these and other objections Broadcom
has to Caltech's subpoenas that are independent from its objections relating to claim preclusion
and claim splitting.   During Caltech and Broadcom's first meet and confer in April 2022,
Broadcom explained its objections to each request, and, in response, Caltech stated that it would
be satisfied with production of source code alone.  Dowd Decl., ¶ 1.  During the following two
meet and confers, the parties' discussion focused solely on Caltech's request for source code and
Broadcom's objection that the doctrine of claim preclusion and its prohibition against claim
splitting bars Caltech's request.  Dowd Decl., ¶ 2.  Thereafter, Caltech declared that the parties
were at an impasse and filed its motion to compel, but it is now demanding Broadcom's
compliance with *all* its requests.  At the very least, therefore, Caltech should be ordered to narrow
its requests.

## IV.   CONCLUSION

      For the reasons set forth above, Broadcom respectfully submits that Caltech's motion
should be denied.

Dated:  December 19, 2022

/s/ James M. Dowd

Taylor Gooch
  California State Bar No. 294282
  taylor.gooch@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1000

James M. Dowd
  California State Bar No. 259578
  james.dowd@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone:  (213) 443-5300

Mark D. Selwyn
  California State Bar No. 244180

BROADCOM'S OPPOSITION TO
CALTECH'S MOTION TO COMPEL

CASE NO. 5:22-MC-80318

mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE
AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6031

*Attorneys for Non-Parties Broadcom Inc. and Broadcom Corp.*

**BROADCOM'S OPPOSITION TO**
**CALTECH'S MOTION TO COMPEL**

**CASE No. 5:22-MC-80318**

1

### CERTIFICATE OF SERVICE

2

I hereby certify that counsel of record who are deemed to have consented to electronic

3

service are being served this 19th day of December, 2022, with a copy of this document via the

4

Court's CM/ECF system per Local Rule CV-5(a)(3).

5

By:     */s/  James M. Dowd*

6

James M. Dowd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BROADCOM'S OPPOSITION TO**                                                **CASE NO. 5:22-MC-80318**
**CALTECH'S MOTION TO COMPEL**