**REDACTED**

Kalpana Srinivasan
  California State Bar No. 237460
  ksrinivasan@susmangodfrey.com
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Ravi Bhalla
  *Admitted pro hac vice*
  New York State Bar No. 5478223
  rbhalla@susmangodfrey.com
**SUSMAN GODFREY LLP**
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

*Attorneys for Plaintiff California Institute of Technology*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| CALIFORNIA INSTITUTE OF TECHNOLOGY,<br><br>          Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>          Defendants. | Case No. 5:22-MC-80318-VKD<br><br>E.D. Tex. Case No. 2:21-CV-0446-JRG<br><br>**PLAINTIFF CALIFORNIA INSTITUTE OF TECHNOLOGY'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL SUBPOENA COMPLIANCE BY BROADCOM CORP. AND BROADCOM INC.**<br><br>Date: January 10, 2023<br>San Jose Courthouse, Courtroom 2, 5ᵗʰ Floor<br>Time: 10:00 AM PT |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>TABLE OF CONTENTS</u>

I.      Introduction ............................................................................................................1

II.     Claim preclusion is a defense for a *party* to assert, and Broadcom is not
        a party ....................................................................................................................1

III.    Broadcom has failed to show that claim preclusion or claim splitting
        applies. ..................................................................................................................3

        A.      Caltech's discovery conduct in the C.D. Cal. Action does not
                support Broadcom's claim preclusion argument. ......................................4

        B.      The C.D. Cal. and E.D. Tex. Actions involve different accused
                products...................................................................................................5

        C.      The '833 Patent is not at issue in the C.D. Cal. Action. .............................9

        D.      There is no privity between Samsung and Broadcom. ..............................12

IV.     The subpoenas seek relevant and proportional discovery....................................13

V.      Conclusion ...........................................................................................................14

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adaptix, Inc. v. Amazon.com, Inc.*,
5
    No. 5:14-CV-01379-PSG, 2015 WL 4999944 (N.D. Cal. Aug. 21, 2015).........................8, 13

6

*Bell v. United States*,
    No. CV F 02–5077, 2002 WL 1987395 (E.D. Cal. 2002) ........................................................2
7

*Brain Life, LLC v. Elekta Inc.*,
8
    746 F.3d 1045 (Fed. Cir. 2014).....................................................................................7, 8, 9

9

*Clements v. Airport Auth. of Washoe Cty.*,
10
    69 F.3d 321 (9th Cir. 1995) ...............................................................................................7

11

*Howell Hydrocarbons, Inc. v. Adams*,
    897 F.2d 183 (5th Cir. 1990) ........................................................................................12, 13
12

*In re: PersonalWeb Technologies, LLC et al.*,
13
    Dkt. 1, No. 5:18-md-02834-BLF (N.D. Cal. June 7, 2018)....................................................12

14

*In re PersonalWeb Technologies., LLC, et al.*,
15
    No. 18-MD-02834-BLF, 2019 WL 1455332 (N.D. Cal. Apr. 2, 2019) .......................7, 12, 13

16

*In re Schimmels*,
    127 F.3d 875 (9th Cir. 1997) .............................................................................................12
17

*Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*,
18
    752 F. App'x 1024 (Fed. Cir. 2018) .....................................................................................10

19

*Oyster Optics, LLC v. Ciena Corp.*,
20
    No. 21-CV-02241-JSW, 2021 WL 3022008 (N.D. Cal. July 16, 2021)...................................6

21

*Oyster Optics, LLC v. Cisco Systems., Inc.*,
    No. 2:20-CV-00211-JRG, 2021 WL 1530935 (E.D. Tex. Apr. 16, 2021) ...................... *passim*
22

*SanDisk Corp. v. Kingston Tech. Co.*,
23
    695 F.3d 1348 (Fed. Cir. 2012)...........................................................................................9

24

*SimpleAir, Inc. v. Google LLC*,
25
    884 F.3d 1160 (Fed. Cir. 2018)..........................................................................................10

26

27

ii

1

**Rules**

Fed. R. Civ. P. 15 .................................................................................................9

Fed. R. Civ. P. 26 .................................................................................................2

Fed. R. Civ. P. 41(a) ............................................................................................9

**Treatises**

18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4405 (3d ed.) ....3

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

iii

## I.      Introduction

In its opposition, Broadcom offers no legitimate basis to evade compliance with Caltech's properly served and appropriately tailored subpoenas. Conceding it cannot seriously dispute relevance or burden, Broadcom resorts to the far-fetched argument that it may avoid complying with the subpoenas because of a purported claim preclusion defense from another case in which it is not a party. The law is clear that this claim preclusion theory is untenable, and it thus cannot free Broadcom from providing the discovery sought by the subpoenas. Broadcom does not cite a single case in which a third party has resisted discovery on the basis of claim preclusion, let alone one in which a court has relieved a third party from its discovery obligations on that basis.

Broadcom's claim preclusion theory—which it is not entitled to raise—is, in any event, unsupported. Though Broadcom obscures the facts, they are straightforward: Samsung is not a party to the C.D. Cal. Action, Samsung products were never accused in the C.D. Cal. Action, and, as Broadcom's own lawyers have recognized, Caltech "drop[ped] its claims against Samsung products containing Broadcom chips" in the C.D. Cal. Action. Dkt. 1-6 at 5. Beyond that, Caltech is asserting a patent in the E.D. Tex. Action that is not at issue in the C.D. Cal. Action. Because the C.D. Cal. and E.D. Tex. Actions do not involve the same parties, the same products, or all the same patents, there is no legal or factual basis for claim preclusion. Tellingly, Broadcom cannot point to a single case in which a party that  was successful in an earlier suit was barred from a later suit against a different party pertaining to different products and an additional patent.

Broadcom's position is made worse because the actual defendant in the E.D. Tex. Action— Samsung—never moved to dismiss the claims against it to the extent they apply to Samsung devices with Broadcom chips, nor has it resisted discovery into its use of Broadcom chips. This Court should order Broadcom's compliance with the subpoenas.

## II.      Claim preclusion is a defense for a *party* to assert, and Broadcom is not a party.

Broadcom predicated its entire refusal to comply with the properly issued subpoenas on the novel and unsupported theory that it—as a non-party to the underlying action—may argue

1

claim preclusion. Broadcom addresses the threshold issue of whether a third party can evade discovery based on claim preclusion with a single paragraph, arguing that the discovery at issue is irrelevant and not proportional "because Caltech's claim against Samsung's products incorporating Broadcom chips are barred by claim preclusion . . . ." Dkt. 17 at 13. Though Broadcom tries to bootstrap its claim preclusion theory into an objection about relevance and proportionality under Rule 26, it is plainly an attempt to latch on to an affirmative defense it has no basis to raise. In order to show that the discovery is *actually* irrelevant and not proportional, Broadcom needs to assert and prevail on a claim preclusion defense on Samsung's behalf. The nature and purpose of claim preclusion make clear that Broadcom is not entitled to do that.

As Caltech explained in its opening brief, claim preclusion is an affirmative defense that is asserted by a *party* to a lawsuit to prevent harassment from repetitive actions. Dkt. 1 at 15-16. Here, Broadcom (incorrectly) claims the E.D. Tex. Action is precluded, in part, by the C.D. Cal. Action. Broadcom is wrong on the law and the facts, but as a threshold matter, Broadcom has no standing to assert claim preclusion as a defense because it is not a party to the E.D. Tex. Action. As such, Broadcom cannot claim that it is "being harassed by repetitive actions." *Bell v. United States*, No. CV F 02–5077, 2002 WL 1897395, at *4 (E.D. Cal. 2002).[1]

It is of no consequence that, as Broadcom points out, Samsung has pleaded claim preclusion as an affirmative defense. As Broadcom acknowledges, to the extent Samsung chooses to pursue this defense, it remains a "live issue" in the E.D. Tex. Action. Dkt. 17 at 13. Broadcom is not resisting discovery on the basis of an actual ruling in the E.D. Tex. Action as to claim preclusion—nor is such a ruling forthcoming given the facts and the law. Samsung notably has not moved on its affirmative defense, moved to dismiss claims involving Broadcom chips, or denied Caltech discovery on the basis of the C.D. Cal. Action.

---

[1] Nor can Samsung for that matter, as it was not sued in the C.D. Cal Action and thus is also not "being harassed by repetitive actions." Surely this is why Samsung has not sought motion practice under such a claim preclusion theory in the E.D. Tex. Action.

2

1    Broadcom is thus seeking to litigate the merits of Samsung's defense in the *first instance*.

2    Not only is that entirely without precedent, but, as discussed below, Broadcom's arguments

3    regarding the individual claim preclusion prongs rest on incorrect assumptions regarding

4    Samsung's positions and products. That is precisely why non-parties do not litigate parties'

5    affirmative defenses.

6    **III.    Broadcom has failed to show that claim preclusion or claim splitting applies.**

7    Setting aside that Broadcom cannot step into Samsung's shoes and argue the merits of a

8    claim preclusion defense, it is the burden of the party asserting claim preclusion to prove it. 18

9    Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4405 (3d ed.) ("Once

10   properly raised, a party asserting preclusion must carry the burden of establishing all necessary

11   elements."). Broadcom has failed to carry that burden.

12   On this record, Broadcom cannot (1) establish that the products at issue across the two

13   Actions are identical or "essentially the same," (2) show that the asserted claims of the '833 Patent

14   (which is at issue in the E.D. Tex. Action, but not the C.D. Cal. Action) are "patentably indistinct"

15   from the patent claims at issue in the C.D. Cal. Action, or (3) establish privity between itself and

16   Samsung. And though Broadcom maintains that claim splitting applies, it does not contest that

17   there is no final judgment in the C.D. Cal. Action that can form the basis of claim preclusion.

18   Broadcom also fails to address that claim preclusion typically applies when a party that

19   lost an initial suit seeks an end-run around that result via a second suit. Dkt. 1 at 15-16. Courts

20   enforce claim preclusion to prevent such second bites at the apple. But Broadcom cites no case in

21   which a party that prevailed in an initial suit was precluded from bringing a separate suit against a

22   different party, let alone a case where, as here, the second suit also involved an additional patent

23   and different products.

24

25

26

27

3

A.   **Caltech's discovery conduct in the C.D. Cal. Action does not support Broadcom's claim preclusion argument.**

Throughout its opposition, Broadcom leans heavily on a smattering of written discovery and deposition testimony to support its claim preclusion argument. But none of its submitted exhibits establish that the E.D. Tex. and C.D. Cal. Actions involve the same causes of action or parties. To the contrary, they are all consistent with the fact that, in the C.D. Cal. Action, Samsung was never a party, Samsung products were never accused, and the accused Apple and Broadcom products ultimately did not include the chips that Broadcom sold to Samsung for use in its devices. Notably, not a single exhibit attached involved discovery served ***to Samsung***—the only party that could assert claim preclusion in the E.D. Tex. Action.

The specific exhibits that Broadcom relies on for this purpose are listed below.

- Exhibits 4, 5: Broadcom's interrogatory response regarding worldwide sales data and the accompanying chart
- Exhibit 6: Requests for admission regarding the use of certain Broadcom chips in Samsung products
- Exhibit 7: E-mail production requests that include Samsung as a search term
- Exhibits 8, 9, and 12: Excerpts from depositions of Broadcom witnesses in which Samsung products and Broadcom's relationship to Samsung are discussed
- Exhibits 11, 13: Documents pertaining to Broadcom's relationship to Samsung

Broadcom tries to use these exhibits to show that Caltech actively litigated or otherwise focused on Samsung products that employ Broadcom chips in the C.D. Cal. Action. There is no basis to draw that conclusion from Broadcom's cherry-picked record snippets. The fact that Samsung surfaced throughout the course of discovery is no surprise. As multiple Broadcom witnesses testified, ███████████████████████████████. It is thus perfectly reasonable to expect that, in a case about Broadcom's Wi-Fi chips, Samsung will be featured. In the examples that Broadcom provides, Samsung often comes up in passing or incidentally. *See, e.g.*, Dkt. 17-9 at 5 ("Q Do you know what the first 802.11ac-compliant chip was at Broadcom? A For my particular segment, the smartphone market? It was the ███. Q Do you know what the first end product to use the ███ chip was? A I believe it was the Galaxy S5.").

1    When Caltech more directly sought information about Broadcom's chips as used by

2    Samsung or Broadcom's relationship with Samsung, that information was relevant to damages

3    more generally, as it showed the value and widespread use of the Broadcom chips that infringed

4    Caltech's patents. Consistent with this, two of the three depositions that Broadcom excerpted are

5    of Broadcom *marketing* employees, *see* Dkt. 17-9 at 3; Dkt. 17-10 at 3, and the third, of a

6    Broadcom business unit manager, Dkt. 17-13 at 3, only reflects questions about the fact that ███

7    ████████████████████████████████████████████. "Samsung" was also used as a term to seek

8    out relevant e-mails regarding certain accused Broadcom chips, again unsurprising, given that such

9    a search would be likely to find e-mails touting the best attributes and value of their products to

10    ████████████████. Dkt. 17-8 at 3.[2]

11    At bottom, none of this transmogrifies the products that Caltech accused in the C.D. Cal.

12    Action—Apple and Broadcom products, exclusive of Broadcom's sales to Samsung for use in

13    Samsung products—into the products accused in the E.D. Tex. Action. Nor does the fact that

14    Samsung is a large customer of Broadcom mean that Broadcom adequately represented its interests

15    in the C.D. Cal. Action. Dkt. 17 at 15-16. Being a good supplier is not the same thing as privity.

16    **B.**    **The C.D. Cal. and E.D. Tex. Actions involve different accused products.**

17    Broadcom has not shown that the accused products in the C.D. Cal. and E.D. Tex. Actions

18    are the same. The products at issue in the C.D. Cal. Action were Broadcom products and Apple

19    products, *see* Dkt. 17-2 (identifying certain Wi-Fi products "developed, made, sold, offered for

20    sale, imported and/or used by [Broadcom or Apple]" as the accused products in the C.D. Cal.

21    Action). By contrast, the products at issue in the E.D. Tex. Action are Samsung Wi-Fi products.

---

22    [2] Broadcom also attached briefing that it and Apple submitted in the C.D. Cal. Action. Dkt. 17-15;

23    *see* Dkt. 17 at 6 (discussing same). The issue pertained to Broadcom's position that, if Caltech did
not accuse certain late-disclosed products of infringement, it would waive any claims against those

24    products. Broadcom cites no court order from the C.D. Cal. Action or admission from Caltech
regarding waiver, only its own briefing. Nor does it spell out any nexus between these late-

25    disclosed products and the chips used in the accused Samsung products. The fact that Broadcom

26    has, in another situation with no apparent connection to the E.D. Tex. Action, argued unilaterally

27    that Caltech waived something has no bearing on whether claim preclusion applies here.

1    Broadcom does not dispute the basic point that a Samsung Wi-Fi product is not the same thing or

2    device as an Apple Wi-Fi product or a Broadcom Wi-Fi product, *see* Dkt. 1 at 13-14, but instead

3    argues that the Apple and Samsung Wi-Fi products are "essentially the same," Dkt. 17 at 17-18.

4         The only evidence that Broadcom offers in support, however, is that Caltech accuses the

5    Wi-Fi functionality in both sets of products. But this does not show that "the differences between

6    [the Apple and Samsung products] are merely colorable or unrelated to the limitations in the claim

7    of the patent." *Oyster Optics, LLC v. Ciena Corp.*, No. 21-CV-02241-JSW, 2021 WL 3022008, at

8    *4 (N.D. Cal. July 16, 2021); Dkt. 17 at 17 (citing same). Broadcom has not shown how the Wi-

9    Fi functionality in Samsung products compares to that functionality in Apple products. Without

10   that, Broadcom's assertion that "[a]ny difference between the Apple products that contain

11   Broadcom chips and the Samsung products that contain the same Broadcom chips is therefore . . .

12   wholly unrelated to the patent claims that Caltech asserts against both sets of products" is

13   unsupported and entirely conclusory. *Id.* at Dkt. 18.

14        Broadcom also does not cite any cases in which products offered by completely separate

15   companies were found to be "essentially the same" on the basis that they both offered the same

16   functionality, such as Wi-Fi, or that they both employed a particular chip as part of that

17   functionality. Indeed, in *Oyster Optics, LLC v. Ciena Corp.*—the only case that Broadcom cites,

18   *see* Dkt. 17 at 13—the court found that the "essentially the same" standard was met where the

19   same exact products, known as "40G products," made by the same exact party, Ciena, were at

20   issue in two suits and the plaintiff did not dispute that "those products are the same." *Ciena*, 2021

21   WL 3022008, at *1, *4.

22        Nor can Broadcom explain why preclusion should apply when Broadcom's sales to

23   Samsung for use in Samsung products were explicitly excluded from the C.D. Cal. Action. In other

24   words, not only were the Samsung products themselves never accused in the C.D. Cal. Action, but

25   Caltech did not even pursue claims against Broadcom based on its sales to Samsung for use in

26   Samsung devices. *See* Dkt. 1-7 at 6 ("Q . . . [A]part from these numbers were there additional WiFi

27                                        6

1   chips with LDPC codes that Broadcom sold during the relevant time period here that are not

2   included in these numbers? A. Yes. There's other WiFi chips that Broadcom sold to other end

3   customers, not Apple end customers, like Samsung . . . . [N]one of that's in here. That's not part

4   of this case, but those are chips Broadcom sold."). As such, the products ***cannot*** be the same across

5   the two Actions.

6       Broadcom does not dispute that its sales to Samsung for use in Samsung products were

7   excluded from the C.D. Cal. Action. It instead argues that Caltech "could have" asserted claims

8   against those Broadcom chips in the C.D. Cal. Action, and its decision to not do so precludes it

9   from asserting claims against Samsung products that use those chips now. Not only is Broadcom

10  falsely equating a Broadcom chip to a Samsung product that uses that chip, but it also reads too

11  heavily into the "could have" language from cases like *In re PersonalWeb Technologies., LLC, et*

12  *al.*, No. 18-MD-02834-BLF, 2019 WL 1455332, at *12 (N.D. Cal. Apr. 2, 2019), which, in turn,

13  relied on *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045 (Fed. Cir. 2014). While it is true that claim

14  preclusion applies to certain claims that "could have" have been raised in earlier suits against the

15  same party, courts have not interpreted that doctrine to preclude any claim that could have *possibly*

16  been raised. In fact, the court in *Oyster Optics, LLC v. Cisco Systems., Inc.* rejected such a broad

17  reading of *Brain Life* and held that a patent that was originally asserted against a defendant but

18  dismissed without prejudice had no res judicata effect. No. 2:20-CV-00211-JRG, 2021 WL

19  1530935, at *5 (E.D. Tex. Apr. 16, 2021).

20      If a patent asserted against a given defendant can be dropped and reasserted against that

21  same defendant, it follows that Caltech could choose not to pursue claims against Broadcom based

22  on its sales to Samsung and instead pursue claims against Samsung. That is especially true because

23  "[a] main purpose behind the rule preventing claim splitting is to protect *the defendant* from being

24  harassed by repetitive actions based on the same claim," and, here, it is *not the same defendant*

25  facing suit across the two actions. *PersonalWeb*, 2019 WL 1455332, at *12 (emphasis added)

26  (quoting *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 328 (9th Cir. 1995)). To hold

27

1    otherwise would improperly expand the scope of precluded claims "irrespective of their similarity

2    or relationship to other, fully-litigated claims." *Oyster Optics*, 2021 WL 1530935, at *5. It is no

3    surprise that Broadcom is unable to cite a single case in which a party that prevailed in an initial

4    suit was precluded from bringing a separate suit against a different party involving an additional

5    patent and different products.[3]

6          Finally, Broadcom continues to argue that it should not be required to provide discovery

7    into the 20th chip—which Samsung has identified as having LDPC functionality—because it uses

8    a "direct encoder." But Broadcom does not contest that this chip was not involved in the C.D. Cal.

9    Action, nor do any of the documents that Broadcom cites show that Caltech has acknowledged

10   that this chip uses a so-called "direct encoder." For example, the testimony from Caltech's expert

11   cited by Broadcom does not establish that this chip uses a direct encoder, only that, on a certain

12   understanding of that term, Caltech's expert did not think such an encoder infringed the patents at

13   issue in the C.D. Cal. Action. Dkt. 17-4. Caltech should not be forced to remain stuck between

14   Samsung's representation of this chip's functionality and Broadcom's, especially given that there

15   is an additional patent at issue in the E.D. Tex. Action and Caltech did not previously accuse this

16

17

18   ───────────────

19   [3] In *Brain Life*, the court found that the plaintiff was precluded from litigating a patent's method claims, which had been voluntarily dropped from an initial suit against the same defendant in which the jury found that the same patent's system claims were not infringed. 746 F.3d at 1050,

20   1053. And in another one of Broadcom's cases, *Adaptix, Inc. v. Amazon.com, Inc.*, the court found that preclusion applied to "infringement theories and patent claims that could have been brought"

21   in the earlier litigation because "Adaptix brought a second set of cases 'to have a second bite at the apple' on three types of claims: those it failed to bring altogether, those it dropped voluntarily

22   and those that were not permitted late in the game in the [earlier litigation]." No. 5:14-CV-01379-PSG, 2015 WL 4999944, at *8 (N.D. Cal. Aug. 21, 2015). Neither of these cases supports the

23   broad application of claim preclusion for the benefit of non-parties that Broadcom seeks here

24   because, in both cases, the plaintiff was precluded from litigating patent claims and legal theories against the *same party* that also were very closely tied to the claims and theories raised in the

25   earlier litigation. Such a nexus does not exist here, where Caltech is seeking to pursue claims (including an additional patent) against an entirely different entity (Samsung) with different

26   accused products (Samsung Wi-Fi devices).

27                                                          8

1   chip. There is thus no reason to treat this chip any differently from the other chips that Samsung

2   identified.[4]

3       **C.      The '833 Patent is not at issue in the C.D. Cal. Action.**

4       Broadcom has not shown that the patents at issue in the two Actions are the same.

5   Throughout its arguments, Broadcom simply ignores the squarely on-point *Oyster Optics v. Cisco*

6   case that Caltech cited repeatedly in its opening brief. *See* Dkt. 1 at 16, 19-21 (citing *Oyster Optics*,

7   2021 WL 1530935).

8       First, Broadcom relies on *Brain Life* to argue that even where a patent or particular patent

9   claims are dropped without prejudice, a party is precluded from asserting those dismissed patents

10  and claims in later suits. Reading *Brain Life* as articulating such a broad, bright-line rule is

11  incorrect. The Federal Circuit has recognized that the voluntary withdrawal of claims is "akin to

12  either a Federal Rule of Civil Procedure 15 amendment to the complaint . . . or a Rule 41(a)

13  voluntary dismissal of claims without prejudice." *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d

14  1348, 1353 (Fed. Cir. 2012) (citation omitted); Dkt. 1 at 19-20 (citing same). And as the court in

15  *Oyster Optics* noted, *see* 2021 WL 1530935, at *5, *Brain Life* simply applied the "principles" of

16  claim preclusion to the facts of the case before it, 746 F.3d at 1053; *see also Oyster Optics*, 2021

17  WL 1530935, at *5 (collecting cases holding that dismissal without prejudice carries no res

18  judicata effect).

19      Not only does Broadcom ignore both *SanDisk* and *Oyster Optics*, but it also fails to explain

20  why the facts of *Brain Life*—where, as above, the plaintiff sought to assert a patent's method

21  claims against a party after the system claims of the same patent asserted against that same party

22  were found not infringed—are instructive here, where Caltech has already prevailed on two of the

23  patents, it asserts an additional patent that it previously dropped without prejudice (the '833

24  Patent), and it has sued a completely different defendant.

25

26  [4] If the Court is inclined to simply order Broadcom to provide information sufficient to show that
    this chip uses a non-LDPC encoder, that information should be in the form of source code.

27                                              9

1        Second, Broadcom argues that the '833 Patent is essentially the same as the three patents

2    that are at issue in the C.D. Cal. Action, but it fails to demonstrate (as it would have to do if it

3    could even bring such a claim preclusion defense) that the asserted claims of the '833 Patent are

4    essentially the same as the claims of the '710, '732, or '032 Patents that are at issue in the C.D.

5    Cal. Action. And  Broadcom fails to respond to Caltech's argument that determining whether the

6    '833 Patent claims are essentially the same is a question for the jury that, at the very least, cannot

7    be determined until after claim construction.

8        To demonstrate the purported sameness between the '833 Patent and the '710, '732, and

9    '032 Patents, Broadcom does not discuss a single specific claim of any of the patents, and instead

10    relies on the high-level relationship between the patents, such as their shared inventors and title or

11    their relationship to IRA error correction codes. But Broadcom's failure to conduct the proper

12    analysis is dispositive of its purported claim preclusion defense.

13        As explained in *Oyster Optics* and Caltech's opening brief, "[t]he party asserting claim

14    preclusion has the burden of showing that the asserted patent claims in the two suits are essentially

15    the same." *Oyster Optics*, 2021 WL 1530935, at *4. And though the Federal Circuit "has not

16    provided guidance on the precise test to be used for determining when patent claims are 'essentially

17    the same,' . . . it has indicated that 'claims which are patentably indistinct are essentially the

18    same.'" *Id.* (quoting *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018)). That

19    inquiry necessarily involves a comparison of the claim language at issue with the claim language

20    that is purportedly the same. *See SimpleAir*, 884 F.3d at 1168 (conducting such analysis by

21    comparing the claim language across patents); *Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*, 752 F.

22    App'x 1024, 1035 (Fed. Cir. 2018) (same). Broadcom has not even identified the specific claims

23    of the '833 Patent that it thinks are patentably indistinct.

24        By failing to conduct such a comparison, Broadcom has not carried its burden to establish

25    claim preclusion. In *Oyster Optics*, Cisco tried to argue that two sets of patent claims were

26    essentially the same because they were "highly duplicative" and "essentially the same claim

27    

1  scope." *Oyster Optics*, 2021 WL 1530935, at *6. The court rejected this as wholly insufficient,

2  finding that, like Broadcom, Cisco "had not even attempted to perform a factual comparison of the

3  claims of the '898 Patent with those of the '327 Patent." *Id.* This was enough on its own to reject

4  Cisco's claim preclusion argument, and Broadcom's failure to explain why the specific, asserted

5  claims of the '833 Patent in the E.D. Tex. Action are essentially the same as the remaining claims

6  of the '710, '732, and '032 Patents in the C.D. Cal. Action is similarly dispositive.

7      The court further held in *Oyster Optics* that, even if Cisco had performed the proper

8  analysis, it would still be improper to rule on whether the patent claims at issue were essentially

9  the same because "[t]he comparison of different claims in different patents for the purpose of

10  determining whether they are 'essentially the same' is a question of fact, not a question of law"

11  and is "for the jury to decide." *Oyster Optics*, 2021 WL 1530935, at *3. In addition, the court

12  needed to construe the claims before any comparison between the claim scope could be done.

13  "Once the Court has construed the claims, Cisco may present evidence to the jury—*e.g.*, evidence

14  that the claims are patentably indistinct from others—to prove its assertion that the claims are

15  essentially the same as other claims previously litigated." *Id.* at *4.

16      Broadcom argues in response, without any discussion of *Oyster Optics* or caselaw of its

17  own, that claim construction is not required for the proper claim preclusion analysis, but it misses

18  the point. The scope of the claims will not be finalized prior to claim construction and that scope

19  is necessary in order to properly compare the claim language in any preclusion analysis. To be

20  sure, the E.D. Tex. court will be construing several of the '833 Patent claims as well as several of

21  the claims that are at issue in the C.D. Cal. Action (i.e., claims 20 and 22 of the '710 Patent, claims

22  11 and 18 of the '032 Patent, and claim 13 of the '781 Patent ). *See* E.D. Tex. Dkt. 84-1 (the

23  parties' list of disputed terms for claim construction, covering many of these claims). And

24  Broadcom's reliance on descriptions of the patents from Caltech's complaints again fails to even

25  identify which specific claims Broadcom actually thinks are precluded. Dkt. 17 at 21.

26

27                                        11

1    **D.     There is no privity between Samsung and Broadcom.**

2    Broadcom argues that it adequately represented Samsung's interests in the C.D. Cal.

3    Action—something *it* must prove in order to establish claim preclusion—but it fails to cite any

4    evidence from Samsung supporting this. Under *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)

5    and *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990), as Broadcom points

6    out, two parties may be in privity if the party in the prior proceeding adequately represented the

7    interests of the party in the current proceeding. But it is the party in the current proceeding which

8    can speak to whether its interests were adequately represented. Broadcom, as the party from the

9    prior proceeding, is *not* in a position to determine whether it adequately represented the interests

10   of Samsung. And because Samsung is not before this Court to make any such representation, there

11   is no basis to find privity here.

12   The cases that Broadcom cites bear this out. In *PersonalWeb*, Amazon was found to be in

13   privity with customers of its S3 services. Amazon brought a declaratory judgment action against

14   PersonalWeb after PersonalWeb filed dozens of suits against Amazon's customers, accusing the

15   S3 technology. Not only was Amazon explicitly bringing its action "to preclude PersonalWeb's

16   infringement actions against [its] customers," but all of the customer cases were consolidated

17   before the same court, Amazon had previously prevailed in an action against PersonalWeb that

18   accused Amazon's S3 technology, and Amazon had agreed to indemnify its customers in the cases

19   filed by PersonalWeb. *PersonalWeb*, 2019 WL 1455332, at *1, *3, *7-8.

20   In short, there were myriad reasons why Amazon's customers were adequately represented

21   in the earlier action—from the fact that Amazon prevailed in the earlier suit to the indemnity

22   agreements—but the customers themselves were also before the court and had the opportunity to

23   speak for themselves regarding the representation of their own interests. And they did: according

24   to the consolidation order, the customers explicitly agreed that "it [wa]s preferable for the customer

25   suits to be stayed pending resolution of Amazon's declaratory judgment action." *In re:*

26   *PersonalWeb Technologies, LLC et al.*, Dkt. 1, No. 5:18-md-02834-BLF (N.D. Cal. June 7, 2018).

27                                                    12

1    In *Howell*, the court found that the same *exact* individuals, when sued first "in their

2    corporate representative capacities" and second "in their individual capacities," were *not* in privity.

3    897 F.2d at 188-89. And in *Adaptix,* the defendants in the second suit were the same as the

4    defendants in the first suit, with the sole exception of unidentified "John Does," who Adaptix

5    added to the later suit and were simply customers of defendants that used 4G LTE-compatible

6    devices. 2015 WL 4999944, at *6. The court found that the John Does were shielded through

7    privity because Adaptix was aware of their existence during the earlier suit, but failed to bring

8    claims against them. Of course, it was not possible for the non-specific and unrepresented John

9    Does to weigh in on the extent to which their interests had been adequately represented.

10    In none of these cases did the court rule regarding the interests of an identified party that

11    was not before it. These cases also show why the relationship between Broadcom and Samsung is

12    not sufficient to establish privity. As the court in *PersonalWeb* recognized, privity does not

13    automatically flow from a manufacturer-customer relationship, 2019 WL 1455332, at *8, and none

14    of the manufacturer-customer relationships in Broadcom's cases mirror the relationship between

15    Broadcom and Samsung. Unlike the Amazon S3 customers or the John Does, who simply purchase

16    the product and use it as consumers, in transacting with Broadcom, Samsung occupies both the

17    role of a customer and a manufacturer. Rather than using Broadcom's products like a consumer,

18    Samsung installs and configures those products within a separate product that it sells.

19    And in both of the customer cases, the manufacturer had *succeeded* in defending against

20    the earlier suit, making it more likely that it had adequately represented its customers' interests.

21    Here, even after Apple and Broadcom's appeal to the Federal Circuit, there is an intact jury verdict

22    of infringement of the '710 and '032 Patents by Broadcom.

23    **IV.    The subpoenas seek relevant and proportional discovery.**

24    The key issue for this Court to resolve is Broadcom's claim preclusion objection, which it

25    asserted as a universal objection to the entirety of Caltech's subpoena requests. For the reasons

26    outlined in Caltech's opening brief, the discovery sought is also relevant and proportional. Dkt. 1

27

1    at 12-14. Proportionality is especially straightforward to establish here because much of the

2    materials sought by the subpoenas are documents that Broadcom has already collected and

3    produced in the C.D. Cal. Action. Accordingly, the burden of these requests is very low.

4            In its opposition, Broadcom takes issue with the scope of specific requests—namely,

5    Request Nos. 1-3, 4, 6-8, and 10—but does not address Request Nos. 5 or 9. As such, this Court

6    should order Broadcom's full compliance with Request Nos. 5 and 9. Broadcom should also be

7    ordered to comply fully Request No. 3, which seeks the datasheets for the 20 identified Broadcom

8    chips. Chipmakers often maintain such documents as a matter of course, and they provide an

9    overview of a chip's operation and features. Caltech has sought datasheets from each of the

10    chipmakers it has subpoenaed, and the vast majority have complied or indicated they will comply

11    with this very straightforward, low-burden request. Similarly, Request No. 7 seeks a targeted set

12    of documents (relating to testing of a specific functionality of the 20 identified Broadcom chips).

13    Broadcom's complaint about the phrase "All documents" in that request is not sufficient to

14    establish undue burden, so it should be ordered to fully comply with that Request as well.

15            Broadcom also should be ordered to comply immediately with Request Nos. 1-2 as they

16    pertain to the functionality outlined in subparts A-D, with an instruction for the parties to meet and

17    confer on the remaining scope of these Requests. Similarly, Broadcom should immediately comply

18    with Request No. 6 insofar as it applies to "WLAN or LDPC coding functionality," Dkt. 1-2 at 9,

19    and with Request No. 10 to the extent it applies to the 20 identified Broadcom chips, again with

20    an instruction for the parties to meet and confer to discuss the remaining scope of both Requests.

21    As for the remaining Requests, Nos. 4 and 8, the Court should order the parties to meet and confer

22    to discuss the appropriate scope of these requests. The Court should further order that all such meet

23    and confers take place within 10 days of its order and relevant production within 20 days, to ensure

24    that Caltech is able to timely raise any further disputes with the Court.

25    **V.    Conclusion**

26            This Court should order Broadcom's compliance with the subpoenas.

27                        14

1   DATED: December 29, 2022

2                                       Respectfully submitted,

3                                       By:   */s/ Ravi Bhalla*

4                                             Kalpana Srinivasan
                                                California State Bar No. 237460
5                                               ksrinivasan@susmangodfrey.com

6                                             **SUSMAN GODFREY LLP**
                                              1900 Avenue of the Stars, Suite 1400
7                                             Los Angeles, CA 90067
                                              Telephone: (310) 789-3100
8                                             Facsimile: (310) 789-3150

9                                             Ravi Bhalla
                                                *Admitted pro hac vice*
10                                              New York State Bar No. 5478223
                                                rbhalla@susmangodfrey.com
11                                            **SUSMAN GODFREY LLP**
12                                            1301 Avenue of the Americas, 32nd Fl.
                                              New York, NY 10019
13                                            Telephone: (212) 336-8330
                                              Facsimile: (212) 336-8340
14
15                                            *Attorneys for Plaintiff California Institute of Technology*
16

17                        **CERTIFICATE OF SERVICE**
18
19          I hereby certify that a true and correct copy of the foregoing has been served on all counsel

20   of record.

21                                                      */s/ Ravi Bhalla*

22                                                      Ravi Bhalla

23

24

25

26

27                              15