```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3  Before The Honorable Virginia K. DeMarchi, Magistrate Judge

 4

 5  CALIFORNIA INSTITUTE OF        )
    TECHNOLOGY,                    )
 6                                 )
             Plaintiff,            )   No. 22MC80318-VKD
 7  vs.                            )
                                   )
 8  SAMSUNG ELECTRONICS AMERICA,   )
    INC., et al.,                  )
 9                                 )
             Defendants.           )
10  _____)

11                                 San Jose, California
                                   Tuesday, January 10, 2023
12

13            TRANSCRIPT OF THE OFFICIAL ELECTRONIC
           SOUND RECORDING  10:57 - 11:33 = 36 MINUTES
14

15  APPEARANCES:

16  For Movant Caltech:
                              Susman Godfrey, LLP
17                            1301 Avenue of the Americas
                              Thirty-Second Floor
18                            New York, New York 10019
                          BY: RAVI BHALLA, ESQ.
19                            KALPANA SRINIVASAN, ESQ.

20  For Respondent Broadcom:    Wilmer Hale
                                350 South Grand Avenue
21                              Suite 2400
                                Los Angeles, California 90071
22                          BY: JAMES DOWD, ESQ.
                                TAYLOR GOOCH, ESQ.
23

24

25
```

2

1  <u>APPEARANCES</u>:   (cont'd.)

2  For the Defendant:              Pearson Warshaw, LLP
                                   15165 Ventura Boulevard
3                                  Suite 400
                                   Sherman Oaks, CA 91403
4                             BY:  MICHAEL PEARSON, ESQ.

5  Transcribed by:                 Echo Reporting, Inc.
                                   Contracted Court Reporter/
6                                  Transcriber
                                   echoreporting@yahoo.com
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Tuesday, January 10, 2023</u>                          <u>10:57 a.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                             --oOo--

4           THE CLERK:  Calling Case 22MC80318, California

5  Institute of Technology versus Samsung Electronics America,

6  Inc., et al., on for motion to compel subpoena compliance.

7      If the parties could state their appearances, please,

8  beginning with Plaintiff's counsel.

9           MR. BHALLA:  Good morning, your Honor.  This is

10  Ravi Bhalla with Susman Godfrey on behalf of the Plaintiff.

11          THE COURT:  Okay.  And this is the movant,

12  Caltech, right?

13          MR. BHALLA:  Correct.

14          THE COURT:  Okay.  Thank you.

15          MR. DOWD:  Good morning, your Honor.  Jim Dowd

16  from Wilmer Hale on behalf of Broadcom, and with me today is

17  Taylor Gooch.

18          THE COURT:  Okay.  And is there anyone here from

19  Samsung today?

20      (No response.)

21          THE COURT:  Sounds like not.  Okay.  Very well.

22          Someone in the back?

23          THE CLERK:  You'll need to come to a microphone

24  for the record, please.

25          MR. PEARSON:  Your Honor, my name is Michael

4

1  Pearson.  I'm with Kirkland and Ellis.  I represent Samsung.

2          THE COURT:  Okay.

3          MR. PEARSON:  I'm here merely to observe the

4  hearing.

5          THE COURT:  Okay.  That's fine.  And you can

6  return to your seat in the back.

7          MR. PEARSON:  All right.  Thank you.

8          THE COURT:  All right.  Thank you.

9      All right.  So this matter is on for Caltech's motion

10  to compel Broadcom's compliance with subpoenas for documents

11  in a patent infringement matter that I understand is pending

12  against Samsung in the Eastern District of Texas.  I do have

13  a number of questions for Caltech at the outset, so I will

14  begin there.

15      The first is, do I only need to address the claim

16  preclusion issue, or do I also need to address the

17  objections that Broadcom seems to have about the scope of

18  the subpoenas?

19          MR. BHALLA:  Your Honor, as just a threshold

20  matter, I don't think you need to address the merits of the

21  claim preclusion issue.  I think that it can be disposed of

22  based, you know, on something analogous to standing, because

23  Broadcom really can't be asserting that affirmative defense

24  on Samsung's behalf, and it can't be asserting it as a basis

25  to resist discovery.

5

1       In terms of the scope of the requests, I think that
2   Broadcom had raised a couple of issues with the scope in its
3   opposition.  Those were new to us.  They didn't come up
4   during the meet-and-confer process.  Our understanding was
5   that the only objection Broadcom was standing on was claim
6   preclusion, and that if we resolved that objection in our
7   favor, Broadcom would simply just produce the documents that
8   we requested, but, since Broadcom has raised it, I do think
9   that there is probably some work to be done on the scope,
10  and in our reply brief we addressed, you know, some of those
11  objections, and even made a compromise proposal on some of
12  them.
13          THE COURT:  Okay.  So the short answer might be
14  the parties should confer further about the scope of the
15  subpoenas, if we get past the claim preclusion issue.
16          MR. BHALLA:  I think there's some work that could
17  be done here today, your Honor.  I think that -- and we
18  could go through even some of the requests, and talk about
19  the scope.  I think, even, on two of them, Broadcom didn't
20  raise anything beyond the claim preclusion issue in its
21  opposition.  So I do think that's some work to be done here
22  today, but, like we've written in our reply brief, there are
23  one or two requests where we'd be happy to sort of go back
24  and discuss with Broadcom.  But definitely some scope, we
25  think, can be enforced today.

6

1          THE COURT:  Well, here's what I'm getting at.  It
2  doesn't sound like the parties have conferred on the scope
3  question, did not confirm the scope question adequately
4  before coming to court, which is not helpful for me.  You
5  know, I don't want to use the time in this proceeding in
6  debating and attempting to resolve matters as to scope if
7  those haven't been discussed in advance.
8     So I'm just asking for Caltech's perspective on that
9  issue.  Has that discussion not really -- it sounds like it
10 hasn't completed.  Maybe it's begun, began before the
11 proceeding, but it hasn't been completed yet, and I take it
12 that's your view.
13         MR. BHALLA:  That's roughly right, your Honor.  I
14 would just reiterate that I think there's a couple of
15 requests, and ones that we would prioritize, that we could
16 deal with today without having further meet-and-confer.
17         THE COURT:  Okay.
18         MR. BHALLA:  But yes, to some degree, there was
19 not adequate discussion on some of the request scopes.
20         THE COURT:  All right.  Now, I do have some
21 questions about the briefing on the claim preclusion issue.
22 So Caltech says in its papers that the devices and things
23 that are accused of infringement in the Eastern District of
24 Texas matter and previously in the Central District of
25 California matter are not the same, and what I'm wondering

7

1  is, in Caltech's infringement contentions in both case, do

2  the Broadcom chips provide the allegedly infringing

3  functionality?

4            MR. BHALLA:  Your Honor, I think the Broadcom

5  chips, as they're used in Samsung devices, are certainly

6  part of the wi-fi functionality, which is sort of the

7  high-level word we're using for the relevant functionality.

8  I think, whether we look at the infringement contentions or

9  we look at discovery in the matter in the Texas case, it's

10 premature to say that the Broadcom chips, as they're used in

11 wi-fi products made by Samsung, are entirely responsible for

12 that wi-fi functionality.

13            THE COURT:  Okay.

14            MR. BHALLA:  So they're part of it, but I don't

15 think that we can say at this point that they're all of it.

16            THE COURT:  And then there's this discussion about

17 overlap between the two actions, and I'm a little confused

18 on this point because, on the one hand, it sounds like, from

19 Caltech's perspective, summarizing where you think the

20 allegations are, 18 of the 20 Broadcom chips overlap between

21 the two actions, but then there's a statement in Caltech's

22 reply brief that says, "The accused Apple and Broadcom

23 products ultimately did not include the chips that Broadcom

24 sold to Samsung for use in its devices," which sounds like

25 there's a complete non-overlap, and I'm just trying to sort

8

1    out, are the same chips, or some of the same chips, at issue
2    in both cases?

3         MR. BHALLA:  The short answer is no, your Honor,
4    because, in the Texas case, it's not chips that are at
5    issue.  It's Samsung mobile devices, Samsung display
6    products.

7         THE COURT:  That contain chips from Broadcom?

8         MR. BHALLA:  That contain chips.

9         THE COURT:  Okay.  So that's what I'm asking.

10        MR. BHALLA:  Yes.

11        THE COURT:  So, for the parts of the infringement
12   contentions that say, "See Broadcom chips," are the same
13   Broadcom chips at issue in that sense?  When I say "at
14   issue," I mean part of the infringement contentions in both
15   cases.

16        MR. BHALLA:  I don't know if it's specifically in
17   the infringement contentions, but yes, there are Broadcom
18   chips that are used in Samsung products in the Texas case
19   that are the same as Broadcom chips that were accused in the
20   California case.

21        THE COURT:  Okay.  So I'm not sure why I have the
22   statement in the reply brief that says they don't include
23   the same chips.

24        MR. BHALLA:  Well, I think that what we're saying
25   there is just two things.  One, there's a kind of

9

distinction between the product that the chip is used in and
the chip itself, but, also, to the extent that Broadcom made
any sales of its own chips to Samsung, those were narrowed
out of the California case.

THE COURT:  No, I get that part.

MR. BHALLA:  Right.

THE COURT:  Okay.

MR. BHALLA:  So I think that's all the statement
was going to.

THE COURT:  But Broadcom also sold chips to Apple,
yes?

MR. BHALLA:  Correct.

THE COURT:  So, again, I understand the
distinction between chips and products, accused products.  I
understand that, but I am still not entirely clear about --
let's just talk about ultimately, you know, by the end of
the case, by the time there was a jury verdict in the
Central District of California.  Were there Broadcom chips
in accused products that overlapped with Broadcom chips in
the now-accused Samsung products?

MR. BHALLA:  In the California case, I don't have
at top of mind the sort of list of Broadcom chips that are
currently at issue there.  I believe there is still some
overlap in the chip numbers that are at issue in the
California case, and some of the chip numbers that are in

1  the Texas case, but, like I said, that did get narrowed in

2  the California case.

3        THE COURT:  All right.  Okay.  So at least there's

4  some overlap.  Maybe there's a debate about what the overlap

5  is, but there's at least some overlap in terms of the

6  Broadcom chips in both cases?

7        MR. BHALLA:  Yes.

8        THE COURT:  Okay.  Your request for production

9  number 10 asked for documents Broadcom produced in the CD

10  Cal action, the Central District of California action.  That

11  seems way too broad.  It's objected to, at least in the

12  briefing.  Given what Caltech says are differences between

13  the Samsung action in Texas and the action against Apple and

14  Broadcom in California, what is the justification for all

15  documents Broadcom produced in the Central District of

16  California action?

17        MR. BHALLA:  Well, your Honor, the operation of

18  the Broadcom chips at issue in the California case is still

19  relevant to the wi-fi functionality at issue in the Texas

20  case, and so that's really what we're focused on.

21        THE COURT:  Why?

22        MR. BHALLA:  Well, because the Broadcom chips are

23  partially responsible for the wi-fi functionality of the

24  Samsung products that use them.

25        THE COURT:  The same?  We just had this colloquy

1  about "Is it the same Broadcom chips or different Broadcom

2  chips?"  So here's where I'm going with this.  At a minimum,

3  the production that was made in the Central District of

4  California case by Broadcom that you now want for purposes

5  of the Samsung action should be limited to what's at issue

6  in the Samsung action, to the extent of the overlap only --

7          MR. BHALLA:  Yes.

8          THE COURT:  -- and not everything.

9          MR. BHALLA:  And that's absolutely right, your

10  Honor, and that's exactly what we propose in our reply

11  brief.  We would be happy for those -- for that production

12  to be limited to just the overlapping chips.

13          THE COURT:  But you have to figure out what those

14  are first, right?

15          MR. BHALLA:  Well, it would be the 20 chips that

16  we've identified for Broadcom, the 20 chips that we've --

17          THE COURT:  Okay.

18          MR. BHALLA:  I think everybody is on the same page

19  about what the 20 chips are.

20          THE COURT:  So there really isn't a mystery.

21          MR. BHALLA:  Not about the precise chips.  There

22  might be some quibbling, like we said, about products and

23  distinctions and, you know, whether a particular chip is

24  still at issue, but the 20 Broadcom, basically, model

25  numbers were identified by Samsung, and I think everybody is

12

1 on the same page about what those 20 model numbers are.

2        THE COURT:  Okay.  Has Caltech asked the

3 California court for relief from the protective order so

4 that production made in that case can be used in the Samsung

5 Eastern District of Texas case?

6        MR. BHALLA:  Not to my knowledge, your Honor.

7        THE COURT:  Okay.  And what is the current time

8 line in the Eastern District of Texas?  Is there a date by

9 which nonparty document production needs to be made?  Are

10 you facing any deadlines that might bear on the timing of my

11 resolution of this dispute?

12        MR. BHALLA:  Yes.  We have a close of fact

13 discovery in, I believe, mid-April.

14        THE COURT:  Okay.  All right.  Those were mostly

15 the questions that I had for Caltech.  Most of my questions

16 about the claim preclusion issue I will address to Broadcom.

17 Is there anything else that you would like to add, though,

18 to the briefing?

19        MR. BHALLA:  Not at this time, your Honor.  I'd

20 just ask for an opportunity to respond after you've spoken

21 with them.  Thank you.

22        THE COURT:  Okay.  Thank you.  All right.

23    With respect to Broadcom's position in this dispute,

24 I'd like you to start by understanding on whose behalf

25 Broadcom is asserting claim preclusion, its own behalf or

13

Samsung's.

MR. DOWD:  Your Honor, Broadcom's position is that because claim preclusion precludes the claim against the Broadcom chips -- and let me back up for one second and be clear about a point.  In the underlying Texas case, Caltech asserts against Samsung a number of different Samsung products.  Some Samsung products have Broadcom chips as the wi-fi functionality.  Other Samsung products use chip makers from -- chips from other chip makers.

From Broadcom's perspective, those chips of other chip makers, we don't -- you know, that's not our issue.  Our issue is that the Broadcom chips -- the Samsung products with Broadcom chips, those are the identical chips --

THE COURT:  I understand.

MR. DOWD:  -- that were accused in the California action.

THE COURT:  At least most of them.

MR. DOWD:  Actually, 19 of them are identical, and the 20th was actually litigated, and Caltech's expert testified, and this is uncontradicted in the briefing, that that chip did not infringe, that the encoder in that chip did not infringe.

THE COURT:  Okay.  But still my question is, on whose behalf is Broadcom asserting claim preclusion, its own behalf or Samsung's?

14

1        MR. DOWD:  Well, the argument is, your Honor, that
2   because there is actually claim splitting, is the issue, and
3   because is it against Broadcom's chips, the discovery that's
4   requested doesn't meet the Rule 26 requirements.  It is not
5   proportional.  It is unduly burdensome.  It is not
6   reasonably calculated, and, therefore, the discovery should
7   be disallowed.

8        THE COURT:  Yes, but whose rights are you
9   proposing to defend here, Samsung's or Broadcom's?

10        MR. DOWD:  I think it's both, your Honor.  It's
11  Broadcom's rights, because Broadcom -- it's Broadcom's chips
12  that are being accused.

13        THE COURT:  Has Broadcom intervened in the Eastern
14  District of Texas?

15        MR. DOWD:  It has not.

16        THE COURT:  Has it filed a DJ action?

17        MR. DOWD:  It has not, but it does have a live
18  action in California.

19        THE COURT:  Does it have an obligation to
20  indemnify Samsung for those chips that are at issue in the
21  Eastern District of Texas that contain those chips?

22        MR. DOWD:  I'm not privy to that information, but
23  it has a commonality of interest.  It is in privity in
24  accordance with the Ninth Circuit's analysis, because it has
25  a commonality of interests in defending the chips.

1           THE COURT:  I mean, commonality of interests is

2 necessary, but not necessarily sufficient.  In the way that

3 you have presented it, this case has some significant

4 distinctions between the situation that you might have where

5 you have a manufacturer and its customers, like the Personal

6 Web situation.  It's not identical unless -- and this is why

7 I was probing it -- Broadcom has such an interest that its

8 chips supply the infringement, alleged infringement, in this

9 case.

10           MR. DOWD:  That is the case, your Honor.

11           THE COURT:  Then why -- okay.

12           MR. DOWD:  And if I can explain why?

13           THE COURT:  Well, here's my thinking here.  This

14 is the kind of issue where it appears to me that Broadcom is

15 resisting discovery based on the merits of an affirmative

16 defense that a litigant has advocated in the Eastern

17 District of Texas action, and a discovery dispute seems to

18 be the wrong venue for resolution of that issue.  So I am

19 basically being asked to say, "No discovery" because I agree

20 that the merits of an affirmative defense -- I agree with

21 whoever is advocating that affirmative defense.

22     Like, that never happened, in the sense that -- let's

23 just say that you were -- this is very first dispute that

24 involved a Broadcom chip.  As a nonparty, Broadcom is being

25 subpoenaed for production of information.  You say, "No

1  infringement.  This is bogus.  The case is bogus.  There's
2  no infringement."  I'm not going to decide that.  I'm going
3  to order the discovery, so that whoever has the case in the
4  Eastern District of Texas can decide that issue, or have it
5  go to trial, or whatever it is.  Why would I resolve a
6  merits issue as a basis for resisting discovery?

7           MR. DOWD:  Well, your Honor, if I can, there are
8  really three reasons.  The first is the burden that's
9  involved.  The second is that it is a matter of law, and it
10 is clear on its face, and the third is that, to the extent
11 that we walk through what the factors actually are here, it
12 is clear that Broadcom's chips, A, are identical.  They're
13 the identical chips, and it's the identical functionality
14 within those chips, something called LVPC, that is accused
15 and is the basis for the claim of infringement.  That's one.

16      Two, in the briefing, in the argument just now, Samsung
17 hasn't identified a single thing outside of Broadcom's chips
18 that is accused, and if you look at the cases like <u>Personal</u>
19 <u>Web</u>, if you look to <u>Brain Life</u>, cases we cite, differences
20 that are outside of the accused functionality are irrelevant
21 to this question.

22           THE COURT:  But isn't that your burden?  I mean,
23 in <u>XY v. Trans Ova</u>, there has to be this comparison of claim
24 scope.  Where is that?

25           MR. DOWD:  That's a separate question.  So there

1 are three issues, your Honor.  The first issue is privity.

2 We are the manufacturer of the product that is supplied, and

3 it is our customer being sued in the second case.

4         THE COURT:  And the Plaintiffs say that your,

5 Broadcom's, functionality is part of what's accused, but

6 it's not all that's accused.  It's not, by itself, enough

7 for there to be infringement.  How am I supposed to resolve

8 that on the record before me right now?

9         MR. DOWD:  Because the chips are the only thing

10 that's accused, and, your Honor, they haven't identified a

11 single element of a claim that they point to anything

12 outside of the chips for.  I tried the case in California.

13 The only thing that is accused is inside the Broadcom chips.

14 It is the encoder of the Broadcom chip that is being

15 accused.  It is nothing outside the Broadcom chip.

16     So that addresses the -- it actually addresses two

17 things.  It addresses the privity issue, but it also goes

18 to -- these are the second and third things.  It goes to,

19 are the products the same, or essentially the same?  And

20 here there's no dispute.  They're the same product numbers.

21 They're the identical product numbers that are at issue in

22 the California case.

23     Then the third thing is, are the patents essentially

24 the same?  And here the law is very clear on this.  This is

25 right out of Adaptix, and it's right out of Personal Web.

18

1 If you look to these patents first, three of them, there's
2 no dispute they're identical, the 710, the 032, and the 781.
3     The third is the 833 patent, and the question is, could
4 they, could Caltech, have asserted that patent in the first
5 case?  That's what cases like Adaptix look to, could they
6 have?  We know they could have, because they did, and the
7 fact that they did, and then dropped it, actually
8 demonstrates the claim-splitting problem that underlies our
9 motion.
10         THE COURT:  So that's where you lose me, because I
11 don't think that you have undertaken the kind of comparison
12 that XY requires for that kind of an argument.  So, just
13 focusing on that aspect of your argument, it requires more
14 than simply showing that one patent is a continuation of
15 another.  It requires more than just saying, "Well, you took
16 discovery on it in the prior case."  That's not enough, and
17 even slight variations in claim scope, it sounds like, will
18 taint your argument.
19     Even putting that aside, why is this coming before me?
20 I mean, the fact that you say, "Well, it's as a matter of
21 law, and it's easy," is kind of how I infer -- you know,
22 "You should be able to decide this easily."  Why isn't this
23 argument in front of the Eastern District of Texas?
24         MR. DOWD:  No, I understand, your Honor, and I'm
25 not meaning to suggest that it isn't a task to be performed.

19

1  It is work.  It is, you know, something that needs to be
2  worked through.  But, if you think about it, what, through
3  its subpoena, Caltech is asking Broadcom to do is to defend
4  its chips in a second piece of litigation.  That is the core
5  of what it's doing.

6       It has admitted -- to me, it was like "Wow, I can't
7  believe they're saying that."  It admitted in its brief that
8  it proceeded through the case in California, it made a
9  decision for some reason, possibly because it didn't want to
10 present an egregious damages number to a single jury, but
11 instead wants to present it to two, split it.

12      It was candid about that.  It said, "We decided at some
13 point we're going to sever out the claims against Samsung
14 and proceed against them separately."  That is claim
15 splitting.  That is the core of the problem, and, as the
16 cases recognize, that puts a party in Broadcom's position to
17 having to defend itself multiple times.

18      We would have to -- your Honor picked on number 10,
19 request number 10.  We would have to go through literally
20 millions of pages of documents to try to sift through all
21 that, a lot of which is actually Apple production
22 material --

23           THE COURT:  All right. Okay.  But I'm not going to
24 make you do that.

25           MR. DOWD:  -- other parties' production material.

1          THE COURT:  I'm certainly not going to make you do

2    that right now.  So that's a scope of production issue.  I

3    totally get that.  So you're saying, "Well, the reason we

4    want to argue about claim production" -- or "claim

5    preclusion and claim splitting" -- "is because these

6    requests are so burdensome?

7          MR. DOWD:  In part, but also because there's a

8    reason that there's such a thing as merger and bar.  It's to

9    give repose to parties.

10         THE COURT:  So this would be more persuasive if

11   you were addressing it to an Eastern District of Texas

12   judge, in a case where you had intervened for this purpose

13   and/or you had a DJ action pending.  That's what I am

14   principally reacting to, is this seems like totally the

15   wrong forum for this discussion, and I am just kind of

16   mystified that the case has been pending for so long, and

17   it's only come to a head in a discovery dispute, this issue.

18   Like, that's amazing to me.

19       So, you know, be that as it may.  It may not be

20   relevant to what I have to decide, but I'm not sure it's as

21   straightforward a task as you make it out to be.  I think

22   this is a highly unusual situation, where we have a party in

23   Broadcom's position in this posture, having not intervened,

24   having not filed a DJ action, where it claims to have

25   interests of the sort that you claim, that is, its chips

21

1  alone are the infringing or not -- the only relevant

2  functionality in all actions, and the same in all -- in both

3  of the actions, both the original action in California and

4  the Texas action.

5       It's also surprising to me that that would be the

6  position given, as I understand it, that there is a jury

7  verdict of infringement that has been affirmed on the 710

8  and 032 patents, and I don't see any indication that anyone

9  is prepared to stipulate that there is infringement on those

10 same patents in the Samsung case, and you would say, "Well,

11 we never get there because of claim splitting, and it

12 shouldn't have been brought in the first place," I assume,

13 but it just seems like a remarkable situation to be in in a

14 discovery matter before me.

15       MR. DOWD:  Look.  There may be many defenses that

16 Samsung has.  We're not privy to all of their defenses.

17 We're not privy to all the issues in that case.  I

18 understand there are license issues in that case, for

19 example.  So how it's deciding to defend, that I'm not here

20 to speak to, but what I can say is that if you look to the

21 factors of privity, are they the same patents, and is it the

22 same product underlying the claim?  In other words, is it

23 the same nucleus of operative fact?

24       That's the question, and there it is clear from cases

25 like Personal Web that where you have a manufacturer and

22

1  customer, there is privity, and it is also equally clear

2  that, on the question of "Is the patent the same?," it is,

3  actually, a continuation.  Your Honor mentioned that.  A

4  continuation, as a matter of law, has to be within the same

5  scope of disclosure as the original application from which

6  it claims priority, and here that's the 710.

7           THE COURT:  But I don't think that is still the

8  law after XY.  The continuation is a factor, but there's

9  actually a claim scope analysis required.  You can't just

10  say, "Continuation, therefore."  So, you know -- and I get

11  the patent law point, and it resonates with me, believe me,

12  but one thing that you have to be able to establish is that

13  Samsung's interests were adequately represented by Broadcom

14  in the prior litigation.

15     That was a key question that was in Personal Web, and

16  it was easier, or easy, for Personal Web to make that

17  argument, because it had intervened, or it had filed a DJ

18  action, and it had expressly agreed to indemnify all of its

19  customers, and for those it hadn't, the Kessler doctrine

20  applied.

21     So this is not that same situation, and it sort of begs

22  the question where you're arguing now about, you know,

23  whether a discovery dispute or a subpoena for discovery

24  gives Broadcom standing to make the same kind of "We're

25  protecting your interests" argument.

1      That, to me, is a very unusual feature of this dispute,

2  is, if you're making this argument on your own behalf or

3  Samsung's, as representing Samsung's interests, then you're

4  saying that being a subpoena recipient is the thing that

5  gives you standing to do that, whether "standing" is the

6  right term or not.  It's like that's the thing that is the

7  basis for this authority.

8           MR. DOWD:  I think there are, again, two things at

9  work here.  On the one hand, if you look back to <u>Personal</u>

10 <u>Web</u>, <u>Personal Web</u> is very clearly distinguishing, and saying

11 the customer relationship gives me standing.  In addition --

12 and it actually uses that word -- an additional basis would

13 be the fact that there is the indemnification agreement, and

14 that's on -- I guess it's page nine.

15          THE COURT:  But it's the nature of that dispute.

16 So, in that case, it was Amazon's service that everybody was

17 using, and with no distinction whatsoever, right?

18          MR. DOWD:  Right.

19          THE COURT:  And now, here, I don't have that in

20 front of me.  I don't have that record in front of me, that

21 it's only Broadcom, and nothing else.  The Plaintiffs tell

22 me that that's not the case.  That's not their infringement

23 contention, only Broadcom's functionality, and nothing else,

24 just like Amazon S3.

25          MR. DOWD:  Well, I'd ask them to bring forward

24

1  their infringement contentions and show that it's not the

2  case, because we've asked.  We've said that they way that

3  they read their claims in California is against only the

4  interior parts of the Broadcom chip.  It's the encoder that

5  does LVPC encoding.

6          THE COURT:  So, then, back to my question.  Did

7  Samsung -- were Samsung's interests represented in

8  Broadcom's litigation of the California action?

9          MR. DOWD:  From our perspective, I would say yes.

10          THE COURT:  Does Samsung think so?

11          MR. DOWD:  I can't speak for Samsung.  I don't

12  represent them.

13          THE COURT:  Okay.

14          MR. DOWD:  But I would say that this also does

15  inform the burdens that are involved because, basically,

16  what Caltech is looking to do is to treat Broadcom as though

17  it is a party in this case, in this Eastern District of

18  Texas case, for purposes of discovery, and so it is trying

19  to get the evidence as though Broadcom were a party.

20          THE COURT:  It's not that way.  I mean, in every

21  single patent infringement case where somebody supplies

22  something, there is third-party discovery in that kind of

23  thing.  I mean, this is normal in that sense.  I have never

24  seen a claim preclusion argument made in this way, number

25  one, but, even if I had, it's pretty standard to have

25

1 somebody seeking source code from somebody else if their

2 product, the accused product, includes some

3 third-party-supplied functionality.  This is not the same as

4 treating the third party as a party.

5          MR. DOWD:  And that gets to my point.  I'm not

6 suggesting that it's abnormal to have discovery of a third

7 party of a component in an accused product.  That's not my

8 argument.  My argument here is -- and I'll give you an

9 example of this.  Request number four in our set of requests

10 here:

11          "Documents sufficient to identify any

12          third-party-developed technology used by

13          you" -- meaning Broadcom -- "as part of

14          the identified products" -- meaning all

15          20 -- "and documents sufficient to

16          enable an engineer to understand the

17          operation of such third-party-developed

18          technology, such as technical

19          descriptions, requirements,

20          specifications, and other documents."

21     Now, your Honor is exactly right that there hasn't been

22 enough meet-and-confer activity here, and so, ultimately, if

23 your Honor is inclined to allow some discovery, I would

24 suggest that we be directed to actually meet and confer on

25 these, and then give a status report, I would say probably

1  in about 30 days.

2      But here, if you step back from that request, many, if

3  not all, of the chips that are at issue are what are called

4  "combination chips."  They have wi-fi functionality.  They

5  have Bluetooth functionality.  They have other types of

6  functionality.  All of the chips will have been manufactured

7  by a third party, like a TSMC.

8      As a result of that manufacturing, they will have

9  technology that that third party embeds that has absolutely

10  nothing to do with wi-fi, with the LVPC codes, or with

11  anything that's at issue in Texas.  So their requests are

12  treating us as though you can take broad-ranging discovery

13  about anything you want, and figure it out later, and that's

14  not appropriate for a third party.

15          THE COURT:  Well, I would agree that it's not

16  appropriate for a third party to have to produce everything

17  that's -- things that are not relevant, or maybe even for a

18  party to produce things that are not relevant, but that's a

19  scope question.  I don't think that, by virtue of the very

20  broad scope, I must conclude that Broadcom is being treated

21  as a party when it's not.

22      So, I mean, I take your point that your client's

23  functionality may be very key, if not the only thing --

24  that's your perspective -- not the only thing that's at

25  issue in the Samsung case.  I'm still not sure that all of

1  the other components that I would need to find are there to

2  find that there's claim preclusion, but I'm more troubled by

3  the fact that I'm being asked to make that call.

4       This is really a question for the Eastern District of

5  Texas, or, I don't know, maybe the Central District in

6  California, given that you still have further proceedings

7  there.  But it's the Eastern District of Texas that should

8  be deciding the merits of an affirmative defense, not the

9  magistrate judge in a different court on a subpoena, and I

10  don't know what to tell you all about that.

11       It comes to me in the posture it comes to me, and I

12  will decide it, but I think the bigger problem for you all

13  is the scope of these requests, which, to my eye, are

14  over-broad in many ways, and would bear some further

15  discussion.

16       So that's my initial inclination.  I will carefully

17  read the cases the parties have highlighted in this

18  proceeding.  I'm also going to give the Plaintiff an

19  opportunity to respond, if you'd like -- or Caltech an

20  opportunity to respond -- but is there anything further from

21  Broadcom that you'd like me to focus on?

22           MR. DOWD:  No, thank you, your Honor.

23           THE COURT:  Okay.

24           MR. DOWD:  Thank you for your time.

25           THE COURT:  All right.  And thank you for your

28

1 presentation.

2     Anything further from Caltech, anything you'd like to

3 respond to?

4           MR. BHALLA:  Yes, your Honor, just a few quick

5 points.  I mean, you won't be surprised to learn that we

6 absolutely agree this is the wrong form for this dispute to

7 be raised.  I'd point out that this is absolutely an issue

8 for the Texas court to decide, if and when Samsung chooses

9 to raise it.  I'd note that Samsung has not raised it at any

10 point in the case yet, and has not resisted discovery into

11 its products that use Broadcom chips on this basis.

12           THE COURT:  Well, they have raised it.  It's in

13 their pleadings.

14           MR. BHALLA:  Sure.  Correct.  I meant they haven't

15 litigated it.  They haven't brought a motion seeking any

16 sort of judgment on the basis of that affirmative defense,

17 but yes, it is in their pleadings.

18     Just two other quick points, your Honor.  On burden, I

19 know that my friend across the aisle has mentioned that

20 these requests are burdensome, but I haven't heard any

21 particular articulation of burden, and, if anything, as

22 we've all been discussing, there is some overlap between

23 these chips here, and that is going to reduce the burden.

24     On request number 10, which is for the documents

25 produced in the California case, I just want to clarify one

1    thing.  We're not seeking documents that were produced by
2    other parties in the California case, just Broadcom's
3    production.  So we're not asking Broadcom to go through, you
4    know, Apple productions and things like that.  We just want
5    its documents pertaining to the chips that overlap between
6    the two cases.
7        The last thing is --
8            THE COURT:  But I'm assuming that production
9    includes all kinds of things, like damages-related discovery
10   and contractual relationships between and among Broadcom and
11   Apple.  I mean, all of that stuff would be totally
12   irrelevant.
13           MR. BHALLA:  Sure.  And we don't know what is all
14   in that production.  We don't have access to those
15   documents.  We're not under the protective order in that
16   case.  But, to the extent, yes, there's stuff that doesn't
17   touch on the chips that overlap, I'm confident we can work
18   that out in the meet-and-confer process.
19           THE COURT:  Okay.  Well, I think it may be that
20   it's warranted for you to have some further discussion about
21   that because, as I indicated, I do think that these
22   discovery requests, as a whole, are broader than they need
23   to be for a third-party discovery recipient.
24       All right.  I think I have what I need to resolve the
25   matter.  Thank you for your briefing and for your

30

1   presentations today on all issues.

2          MR. BHALLA:  Could I add one just quick point on

3   logistics, your Honor?

4          THE COURT:  Yes.  Okay.

5          MR. BHALLA:  So, in terms of meeting and

6   conferring, I just want to note that these subpoenas have

7   been pending since April of 2022, so we're coming up on a

8   year.  The negotiations were gummed up by this claim

9   preclusion stuff.  Thirty days, which was proposed by the

10  other side, I think is too long.  We are coming up on a fact

11  discovery deadline in April.  So I'd ask the Court to order

12  something a little bit faster, and to give us some quick

13  turnaround.

14         THE COURT:  Okay.  Well, I will consider your

15  request --

16         MR. BHALLA:  Thank you.

17         THE COURT:  -- but I only have so much time in the

18  day as well.  So I will try to be prompt in giving you some

19  further guidance, but you'll have to wait until I get to it.

20         MR. BHALLA:  Thank you very much, your Honor.

21         THE COURT:  All right.  Thank you.

22         MR. DOWD:  Thank you, your Honor.

23         THE COURT:  This matter is concluded.

24         THE CLERK:  Court is concluded.

25       (Proceedings adjourned at 11:33 a.m.)

31

<u>CERTIFICATE OF TRANSCRIBER</u>

1
2
3      I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.
14 
15
16      Echo Reporting, Inc., Transcriber
17        Wednesday, January 18, 2023
18
19
20
21
22
23
24
25